**MILLER et ux. v. BABB.** (No. 557–4111.)

(Commission of Appeals of Texas, Section A. June 28, 1924.)

**1. Frauds, statute of ⊚⇒60—"Building restriction" held an easement and within statute.**

A "building restriction" is an easement, which is a right attached to the estate itself and not to the person of the owner of the dominant tenement, and, being an interest in land, is within statute of frauds.

**2. Easements ⊚⇒1—"Affirmative" and "negative easements" defined.**

An "affirmative easement" is one which gives owner of dominant tenement right to use servient tenement or do some act thereon which would otherwise be unlawful, while a "negative easement" restricts owner of servient estate in his use of his land in favor of owner of dominant tenement.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Affirmative Easement; Negative Easement.]

**3. Frauds, statute of ⊚⇒60—Easements created only by grant.**

Creation of an easement must be by grant, and not by parol agreement.

**4. Contracts ⊚⇒105—Prohibited contract not enforceable.**

A contract prohibited by law cannot be enforced on ground that it is supported by consideration.

**5. Estoppel ⊚⇒61—Estoppel to deny contract not to be claimed by one who admits that no contract was made.**

Estoppel to deny contract cannot be claimed by one who admits that no such contract was ever made.

**6. Frauds, statute of ⊚⇒74(1)—Oral building restriction held unenforceable.**

Under Rev. St. art. 3965, providing that contract for sale of land cannot be enforced unless it is in writing, building restriction resting in parol only is unenforceable.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by W. P. Babb against R. W. Miller and wife. Judgment dissolving temporary injunction was reversed and cause remanded by Court of Civil Appeals (259 S. W. 177),

and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Dallas Scarborough, of Abilene, for plaintiffs in error.

Kirby, King & Overshiner, of Abilene, for defendant in error.

BISHOP, J. We adopt from the opinion of the Court of Civil Appeals the following:

"W. H. Barnett owned three lots, Nos. 10, 11, and 12, situated in the northwest corner of block 121 of the city of Abilene, on which was erected his residence, which fronted north on South Third street. He also owned lots 1 and 2 in the northeast corner of the same block, which two lots were separated by an alley 20 feet wide, running north and south through the block, from his residence property. Lots 10, 11, and 12 were platted to face west, and lots 1 and 2 were platted to face east on Poplar street, but for convenience his residence was constructed to face north, occupying, as it did, lots 10, 11, and 12 as a whole. He sold lots 1 and 2 to W. P. Babb, who in turn sold the east half of lots 1 and 2 to R. W. Miller. Lots 1 and 2 had a depth of 140 feet, which made lot 1 abut on South Third street a distance of 140 feet.

"W. P. Babb instituted this suit against R. W. Miller to restrain him from erecting a residence building on the east half of lot 2 so as to front east on Poplar 'street. A temporary writ of injunction was first issued to restrain the erection of the building, but later that writ was dissolved, and from the order of dissolution Babb has prosecuted this appeal.

"Upon hearing the motion to dissolve a general demurrer to plaintiff's petition was sustained, and that was the only basis for the order of dissolution.

"As against the general demurrer, the allegations in plaintiff's petition must, of course, be accepted as true, and we shall undertake to review the facts which may be briefly summarized as follows: At the time Barnett sold lots 1 and 2 to Babb it was agreed between them that lots 1 and 2 should be used only for residence purposes, and that any residence built thereon should front north on South Third street, just as Barnett's residence faced; the object and purpose of that agreement was to carry out Barnett's desire that no residence would be erected on either lot 1 or lot 2 to front east on Poplar street, and thereby cause the back premises of such residence to abut on the side of Barnett's residence. But for that agreement on the part of Babb, Barnett would not have sold lots 1 and 2 to him. That agreement on the part of Babb was not incorporated in the deed of conveyance to him of lots 1 and 2, and was an agreement in parol. When Babb sold the east half of lots 1 and 2 to Miller he did so under an agreement to the same effect relative to the building restrictions; in other words, Miller agreed that any residence he might put upon the property so purchased should not front east on Poplar street but would front north on South Third street, just as Barnett's residence did. Babb would not have made that sale to Miller in the absence of that agreement, which was likewise in parol, and was not embraced in the deed. At the time

Miller purchased from Babb he also had notice of the agreement constituting the building restriction which had been agreed to between Babb and Barnett."

The court held that testimony would be admissible to prove the parol agreements over the objection that such testimony would be in conflict with the terms of the deeds, and that the building restriction would be enforceable though created by parol agreement only, and reversed the judgment of the trial court dissolving the injunction and remanded the cause. 259 S. W. 177.

[1] A "building restriction" is an easement which is defined to be:

"A liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose. As more fully defined it is a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement, in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former, a charge or burden upon one estate (the servient) for the benefit of another (the dominant)."

[2] An easement is an incorporeal hereditament imposed upon corporeal property. In an appurtenant easement there are two distinct tenements, one a dominant tenement to which the right belongs, and the other a servient tenement upon which the obligation rests. It is an interest in land, and therefore real estate, within the meaning of our statute of frauds. The right is attached to the estate itself and not to the person of the owner of the dominant tenement, and is a charge upon the estate or property of the servient tenement. An "affirmative easement" is one which gives to the owner of the dominant tenement the right to use the servient tenement, or to do some act thereon which would otherwise be unlawful. A "negative easement" is one in which the owner of the servient tenement is by reason thereof restricted in some of his rights in respect to his lands, in favor of the owner of the dominant tenement. 9 R. C. L. p. 740.

[3-6] The creation of an easement must be by grant. It cannot be created by parol agreement. 9 R. C. L. 745. There is nothing in either the deed from Barnett to Babb, or from Babb to Miller, which would make the land sold servient to that retained. If, under the facts as alleged, the tenement of Miller is impressed with a negative easement or servitude in the interest and for the benefit of the parcel of land owned by Babb, it was created, not by any instrument in writing, but solely by an oral promise made by the purchaser to the grantor at the time deed was executed. The grantor was charged with knowledge that under the law no such easement in favor of his land could be cre-

ated by an oral agreement or promise, even if made as part of the consideration of the sale. A contract prohibited by law cannot be enforced on the ground that it is supported by a consideration. Nor can an estoppel to deny a contract be claimed by one who admits that no such contract was ever made. Article 3965, Revised Statutes, having provided that a contract for the sale of real estate cannot be enforced unless it is in writing, such contract resting in parol only is nonenforceable either in law or in equity. If article 3973a affords Babb any relief whatever by reason of a fraudulent promise to do a thing in the future, it is not the relief here sought, but only the right in equity to rescind the contract of sale by reason of such fraud, or a suit at law for damages by reason thereof. Ham v. Massasoit Real Estate Company, 42 R. I. 293, 107 Atl. 205, 5 A. L. R. 440; Pyper v. Whitman, 32 R. I. 510, 80 Atl. 6, 35 L. R. A. (N. S.) 938; Sprague v. Kimball, 213 Mass. 380, 100 N. E. 622, 45 L. R. A. (N. S.) 962, Ann. Cas. 1914A, 431.

The petition in this case is subject to general demurrer, and we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

OURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.