**JAMESON v. ERWIN, County Judge, et al.**

No. 13311.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 28, 1936.

Julien C. Hyer, of Fort Worth, Preston Martin, of Weatherford, and A. W. Christian, of Fort Worth, for appellant.

V. P. Craven and Nolan Queen, both of Weatherford, for appellee.

DUNKLIN, Chief Justice.

A petition was filed with the commissioners' court of Parker county for an order to lay out and open a public road in precinct No. 1 in that county. It was signed by more than eight freeholders living in that precinct. That petition reads as follows:

"Notice of application for public road.

"Notice is hereby given that application will be made to the Honorable Commissioners' Court of Parker County, Texas, at its January term to be held at the court house in Weatherford, Texas, on the 14th day of January, A. D. 1935, for a road beginning at a point on the Weatherford and Lake Worth road, where the old stock gap was located on the Jameson tract of land, thence thru the Jameson land. Thence N. thru the Scarlet land, thence N. thru the John Woods land and NW thru the P. S. Rose land, thence thru the Reese land, thence NE thru the Reese land and the Brewer survey, thence N and W thru the Brock land, thence thru the Geo. Reese land and out in and to the Azle and Aledo road."

That petition was dated and filed with the commissioners' court November 28, 1934.

Notice by written advertisement of that application was given for 20 days by posting the same at the courthouse door of said county, and in two other public places in that vicinity of the route of such proposed road. Following such advertisement, the commissioners' court appointed a jury of 5 freeholders to lay out, survey, and describe the proposed road to the greatest advantage to the public and so that the same could be traced with certainty, with direction that they make written report of their proceedings to the next term of court, with the field notes of such survey and a description of the proposed road.

On the same day the court ordered the clerk of the court to make out and deliver to the sheriff of the county duplicate copies of the order appointing them, and each and all of those jurors were duly served with copies of said order and made due return of such service in accordance with the requirements of article 6707, Rev.Civ. Statutes. The order appointing the jury of view and the notice served on each member thereof embodied the same description of the proposed road as was contained in the notice of application for opening the road, copied above.

A tract of 240 acres of land owned by J. R. Jameson was traversed by the proposed road and the jury of view served written notice upon him that they would, on the 5th day of February, 1935, proceed to lay out and survey a road, describing it with the same calls as in the application therefor, and said notice was served more than five days before the date so set by the jury of view. At the time so set, the jury of view proceeded to lay out the road. On that occasion, Jameson protested against the opening of the road across his land.

The jury of view returned their report to the commissioners' court, reciting that with the assistance of the county surveyor they had proceeded to lay out and survey a road, describing it by the same calls as contained in the documents referred to above, with field notes of that portion of the road which crossed Jameson's land, but with no field notes of any other portion of the proposed road.

The report further recited that the jury of view had assessed damages for J. R. Jameson's land at $30. Attached to that report was the recommendation that the proposed road be run along the north line of Jameson's land and thence south on his east line, which was an entirely different route, and which recommendation was not adopted by the commissioners' court.

On February 11, 1935, the commissioners' court entered an order reading as follows:

"On this the 11th day of February, A. D. 1935, came on to be heard the report of the jury of view appointed to lay out and survey a road beginning at a point on the Weatherford and Lake Worth road, where the old stock gap was located on the Jameson tract of land; thence N. thru the John Woods land, and N. W. thru the P. S. Rose land, thence thru the Reese land; thence N. E. thru the Reese land and the Brewer survey; thence N. & W. thru the Brock land, thence thru the Geo. Reese land and terminating at the Azle and Aledo road, it is ordered that the same be approved; that said road is hereby established, and the field notes of said survey and description of said road be recorded in the Minutes of this Court.

"It is further ordered that there be allowed and paid as damages, and as adequate compensation for the land taken for said road, the amount of money as fol-

lows: To J. R. Jameson, the sum of $30.00; and that said sum be paid to said J. R. Jameson or be deposited to his credit with the County Treasurer of this County.

"It is further ordered that said new road be and is hereby classified as a road of the 3rd class; that so much of said new road as lies within road precinct No. one, shall constitute a part of said precinct, and that the overseers of roads within said precinct cause said new road, so far as the same is within their respective precincts, to be opened and worked."

J. R. Jameson refused to accept that amount of damages and instituted this suit in the district court of Parker county to restrain the opening of the road across his land, and he has prosecuted this appeal from a judgment denying him that relief.

■ It is well settled by many decisions of our appellate courts that a strict compliance with the statutory provisions contained in chapter 2, title 116, Revised Civil Statutes (article 6702 et seq.), is necessary to confer jurisdiction on the commissioners' court to lay out and establish the public roads in this state. Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162; Hill v. Taylor County (Tex.Civ.App.) 294 S.W. 868, and authorities there cited.

■ Jurisdiction of the commissioners' court did not attach for the following reasons: (1) The notice of application filed with the commissioners' court for an order to lay out and establish the road was not in compliance with the provisions of article 6705, Rev.Civ. Statutes, in that it failed to definitely fix the termination of such road. By reference to that notice it will be seen that the terminus of the proposed road was entirely indefinite, in that not only was there an absence of any location on the ground, but no compass bearings were given of the lines leading thereto running through some of the intervening tracts before the terminus was reached; (2) and the same indefinite description was contained in the order appointing the jury of view, and in the notice served on them, and in the notice which they served on J. R. Jameson; and also in the order of the court approving the report of the jury of view and ordering the road opened. Article 6705, Rev.Civ. Statutes; Allison v. Wilbarger County (Tex.Civ.App.) 24 S.W.(2d) 1103; Live Oak County v. West (Tex.Civ.App.) 206 S.W. 965; Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162. Furthermore, the field notes of the survey and description of the road included in the report of the jury of view was not in compliance with the provisions of article 6706, Rev. Civ. Statutes, in that they were confined only to that portion of the road that crossed Jameson's land. As shown above, it included no field notes of the road after passing out of Jameson's land and through other tracts before reaching its terminus. Nor does the report of the jury of view show that they served notice on the owners of such other tracts of land before they made the survey; the only notice given, as recited in their report, was to Jameson.

■ Article 6706, Rev.Civ. Statutes, authorizes commissioners' courts to appoint a jury of view who shall proceed to "lay out, survey and describe such road to the greatest advantage to the public, and so that the same can be traced with certainty," and also provides that the report shall embody field notes of the survey. Those provisions undoubtedly apply to the proposed road as a whole.

■ The county judge testified without controversy that the road north of the Jameson tract was not surveyed at all; and, further, that "there was already a road there and the only survey was through the Jameson land." Even though it be said that the field notes of the road through the Jameson tract were sufficient, they would not authorize the laying out of the remainder of the road through the other tracts.

We quote the following from the decision in Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162, 1164: "But aside from the land owner being entitled to the notice intended to be afforded by this requirement, it is by the statute made necessary in the interest, equally, if not primarily, of the general public. The person whose land may be taken is not alone concerned in the laying out of a new road to serve the general public. Nor is it of exclusive interest to those making application for it. The prime interest to be consulted in the entire matter is that of the public. Only that interest can justify the taking of private property for the purpose. The location of a public road is of important concern to the public."

■ The fact that the portion of the road running through the land north of the

Jameson tract had been in use as a neighborhood road for the convenience of citizens of that immediate community for over 40 years, as found by the trial court, did not establish its status as a statutory public road of the third class to be supervised by the county commissioners in accordance with the provisions of article 6713, Rev.Civ.Statutes.

Furthermore, the proceedings of the commissioners' court were not under the provisions of article 6711, Rev.Civ.Statutes, as amended by Acts 1930, 5th Called Sess., c. 62, § 1 (Vernon's Ann.Civ.St. art. 6711), for establishing neighborhood roads, if it could be said that the same was applicable, and as to which we express no opinion. Nor did the order of the commissioners' court sufficiently describe the road as a neighborhood road, even under that statute.

█ The suit was a direct attack on the action of the commissioners' court in establishing the road across the land owned by Jameson, and since that court did not acquire jurisdiction to make that order, plaintiff was entitled to the injunctive relief prayed for in his petition. Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162; Robison v. Whaley Farm Corporation (Tex.Com.App.) 37 S.W.(2d) 714.

Accordingly, the judgment of the trial court is reversed, and judgment is here rendered granting plaintiff the injunction prayed for in his petition, and this judgment will be certified to the trial court for observance.

The foregoing conclusions render it unnecessary to determine the merits of appellant's further contention that the evidence shows conclusively that the road across plaintiff's land was opened and established solely for the benefit of the petitioners and not for the benefit of the public at large, and for that reason alone was void.

BROWN, Justice (concurring).

Concurring in the disposition of the case, as is reflected in the opinion by Chief Justice DUNKLIN, the writer respectfully urges the following additional reasons why appellant Jameson is entitled to the relief sought.

The road sought to be established must be shown to be a public necessity, and the law, quite naturally, vests in the county commissioners' court certain discretion in establishing and opening a public road; but this discretion must be exercised reasonably. The needs of the public must be considered alongside of the rights of the landowners who are to be affected by the opening of the road. Neither can be ignored and justice be meted out.

The undisputed record before us shows that all the parties, living north of appellant Jameson, who are to be served by this proposed road, have several public roads now in existence, leading in every direction. It is apparent that the purpose of the petitioners is to acquire a shorter road leading south to the road which connects with the road to Azle and also with the Jacksboro highway.

The undisputed evidence shows that Jameson owns a tract of 240 acres, which he uses, principally, for the purpose of pasturing livestock, and that to open the road through his small stock pasture will largely destroy the usefulness of his land for the purpose to which he puts it.

Jameson offered to give an adequate roadway over his north line to his northeast corner and down his east line to the public road sought to be reached by the proposed highway. The undisputed evidence shows that a road builder offered to construct such a road for the small sum of $150. It is apparent that the route offered by Jameson, around his land, is only a short distance (approximately one-half mile) further than the proposed route through his pasture.

In this day of good roads and rapid travel, such additional distance for a neighborhood, or third class, road is insignificant.

There is no public necessity shown to be involved, in forcing a road through Jameson's small pasture and thereby doing him great damage and injustice merely to save the public a distance of about one-half mile, especially in view of the several roads and routes now open to those to be served, which lead in all directions.

This is not a case where the petitioners and the public are without outlets and highways, but one where a small number of citizens, to be affected, seek to save travel for about one-half mile by going directly through appellant's small pasture, instead of around it. The necessity for the road leading to the south may be found to exist, but when such a road can be had around appellant's pasture, such necessity, when found, will not warrant the forcing

of a road through appellant's pasture, under the facts here disclosed.

The order of the commissioners' court, under the facts, was an abuse of such discretion as is lodged in it by the law of our state.