NO. 07-06-0150-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 21, 2008
_____

THOMAS EVERETT ALLEN, APPELLANT

V.

BARBARA ALLEN AND ANDREW SIDNEY ALLEN, III, AND
JAN YATES BOULTINGHOUSE, APPELLEES
_____

FROM THE 33RD DISTRICT COURT OF LLANO COUNTY;

NO. 13,883; HONORABLE GUILFORD L. JONES, III, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.


**OPINION**


The motions for rehearing of appellees Barbara Allen and Andrew Allen and Jan

Yates Boultinghouse are denied. We withdraw our opinion of April 15, 2008, and substitute

the following opinion. The judgment issued April 15, 2008, remains in place.

This declaratory judgment action concerning access to land was partially resolved

by summary judgment with the remaining issues tried by jury. In its judgment, the trial court

declared a north-south road across appellant Thomas Everett Allen's property a public road

and an east-west way across the same land an easement by prescription and estoppel in favor of appellees Barbara Allen and Andrew Allen.  We reverse and render in part and remand in part.

## Background

Barbara Allen's parents James and Ella Johnson owned some 1300 acres of ranch land in Llano County, Texas.  After James Johnson died, the land was divided among their three children.  Barbara's tract, some 457 acres, is referred to in this litigation as the "Barker Hill Pasture."  By a 1970 deed, Barbara's mother Ella Johnson conveyed a life estate in the Barker Hill Pasture to Barbara, and the remainder interest to Barbara's son Andrew Allen.  Barbara Allen and Andrew Allen were plaintiffs in the trial court.

Directly west of the Barker Hill Pasture lies a 3500-acre tract of ranch land owned by appellant, who is referred to in his brief, and in this opinion, as Tommy Allen.[1]  This property includes land Tommy inherited from his parents Tom and Iva Allen as well as property he purchased.  Collectively we refer to this property as the "Allen property."  North of the Allen property lies the Yates Ranch which at the time of trial was operated by Jan Boultinghouse, as executor of the estate of her father, Mack Yates.

At the heart of this dispute is the issue of passage across the Allen property to the Yates Ranch on the north and the Barker Hill Pasture on the east.  A road known in this

---

[1] Appellees Barbara Allen and Andrew Allen are not related to appellant Thomas Everett "Tommy" Allen.  Because of their shared surname, we find it necessary for clarity and brevity to refer to them by their given names.

2

litigation as County Road 216A (CR-216A) traverses the Allen property in a north-south direction, terminating at the gate of the Yates Ranch. Branching off CR-216A and heading east approximately eight-tenths of a mile to the fence line separating the Allen property and the Barker Hill Pasture is a way known in this litigation as the Barker Hill Pasture Road.

Near the point where it enters the southwest corner of the Allen property, Tommy placed a gate on CR-216A during the late 1980s (the "1987 gate"). Near the center of the Allen property, but south of the intersection of CR-216A and the Barker Hill Pasture Road, Tommy earlier installed another gate on CR-216A (the "1974 gate"). At the point CR-216A reaches the Yates Ranch is a third gate, the "Yates gate."

When the Johnson land was divided, Barbara's sister Millie Ward received a tract lying to the south of the Barker Hill Pasture. Llano County Road 217A enters Millie Ward's tract and from that road a way exists northwesterly into the Barker Hill Pasture.

In 1970, Andrew and his father, Sidney Allen, demolished a building in Austin and used some of the salvaged materials to construct a small house on the Barker Hill Pasture. At trial there was testimony, over objection, that during 1970, as Andrew and his father worked on the house, Tom Allen asked if help was needed cutting limbs "over there on your road." There was testimony that it was often necessary to cut limbs to permit travel along Barker Hill Pasture Road. Before his death in 1981, Sidney Allen also constructed a "bunk house" and cabin for deer hunters, both in proximity to the cabin built in 1970. Barbara later made additional improvements to the property, which served family gatherings and later was used by deer hunters.

3

Tom Allen died in 1971 and in 1974 Tommy began locking the 1974 gate with concern for the welfare of his elderly mother, Iva Allen, who lived on the Allen property. When Tommy later acquired property to the south, along CR-216A, and installed the 1987 gate, he moved the lock from the 1974 gate to the 1987 gate. Andrew and Barbara did not oppose the lock and they received access by a combination and later, as the lock changed, a key. However, the arrangement proved less than satisfactory as locks disappeared.

There also was testimony that after Tom Allen's death Iva Allen referred on at least one occasion to the Barker Hill Pasture Road as "your way" when she asked Andrew to pick up her mail as he went to town.

According to Andrew, during 1990 he and Barbara encountered Tommy at the 1987 gate and complained about the locked gate. Also according to Andrew, Tommy told them "Your way to go is down by [Millie Ward's]." Andrew responded that he and Barbara possessed an easement over the Barker Hill Pasture Road. Thereafter, Tommy retained control of the gate and its access to the Allen property.

Andrew further testified he and Tommy had another conversation at the gate in 2002. This time Tommy said he might have to sell his property and if this occurred Andrew and Barbara could no longer use the Barker Hill Pasture Road. This conversation prompted the suit by Barbara and Andrew.

In their suit, Barbara and Andrew sought a declaration that CR-216A was a public road and an easement in their favor existed over the Barker Hill Pasture Road. They also

4

sought temporary and permanent injunctive relief assuring their right to use CR-216A and the Barker Hill Pasture Road.

Boultinghouse intervened in her representative capacity seeking declaratory and injunctive relief to ensure use of CR-216A. She joined Llano County as a defendant, asserting it refused to keep the road open for the public and provide maintenance.

On the cross motions for summary judgment of Boultinghouse and Tommy, the court entered an interlocutory order declaring CR-216A a public road dedicated by statutory proceeding of the Llano County commissioners court in 1932. The remaining issues were tried by jury which found Barbara and Andrew possessed a prescriptive easement and easement by estoppel over the Barker Hill Pasture Road. It also found no portion of CR-216A was abandoned. The court entered a judgment conforming its summary judgment order and the jury's findings. Tommy timely appealed. Llano County did not appeal.

## Issues

Tommy presents four issues, three containing multiple sub-parts, challenging: (1) the grant of summary judgment that CR-216A is a county road; (2) the judgment of an easement by prescription in favor of Barbara and Andrew; (3) the judgment of an easement by estoppel in favor of Barbara and Andrew; and (4) the award of attorney's fees in favor of Boultinghouse, Barbara, and Andrew.

5

Issue One: The Cross-motions for Summary Judgment

Boultinghouse moved for a partial summary judgment declaring that CR-216A, as it traverses Tommy's property, is a public road of the third class. Tommy filed a cross-motion seeking a declaration that no public roadway exists on his property, and as to the claims of Barbara and Andrew, that no easement by prescription or estoppel exists on the Barker Hill Pasture Road. Tommy filed a separate response to Boultinghouse's motion and Boultinghouse and Barbara and Andrew each filed responses to Tommy's motion. The trial court rendered judgment in favor of Boultinghouse and denied Tommy's motion. On appeal, Tommy contends the court erred by granting summary judgment for Boultinghouse. He does not also assert that judgment should have been rendered on the grounds he presented.

The movant for summary judgment has the burden of showing there is no genuine issue of material fact and she is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c). Reviewing a summary judgment, we take evidence favorable to the nonmovant as true, and indulge every inference and resolve every doubt in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant "who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim." *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004) (*citing Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002)). A plaintiff moving for summary judgment on her own cause

6

of action must conclusively prove each element of the cause of action. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986) (per curiam).

When parties file cross motions for summary judgment, and one motion is granted and the other denied, the appellate court reviews the summary judgment evidence presented by both sides and determines all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). If the issue raised is based on undisputed and unambiguous facts, then the reviewing court may determine the question presented as a matter of law. *Gramercy Ins. Co. v. MRD Invs., Inc.,* 47 S.W.3d 721, 724 (Tex.App.–Houston [14th Dist.] 2001, pet. denied). However, if resolution of the issue rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings. *Id*.

Boultinghouse's motion for partial summary judgment asserted that "the extension of County Road No. 216-A as it traverses across defendant Thomas Everett Allen's property was designated as a public road of the 3rd class by the Llano County Commissioners court in 1932[.]" By its summary judgment order, the trial court denied Tommy's motion in its entirety and partially granted Boultinghouse's motion, finding the summary judgment proof established the following:

> County Road 216-A was established as a 3rd class road in the 1932 County Commissioners' Court proceedings and, unless abandoned, remains a 3rd class public county road;

The identification of County Road 216-A in the 1932 County Commissioners (sic) Court proceedings was sufficient to establish the course of the roadway through the property currently owned by Defendant Thomas Everett Allen;

When dedicated, a sufficient public purpose existed for County Road 216-A;

The part of County Road 216-A that traverses the property currently owned by Defendant Thomas Everett Allen was not, as a matter of law, statutorily abandoned by the alleged locking of the gates by Defendant Thomas Everett Allen in approximately 1988.

The summary judgment record contains copies of maps[2] showing a road, bearing the designation of a county road numbered 216-A, entering the Allen property on its south property line and continuing in a northerly direction. As we perceive the issues presented, there is no dispute that such a road exists at least through part of the Allen property, or that it bears the designation CR-216A.[3] But the trial court's summary judgment order declares more. It declares, *inter alia*, that CR-216A was established in the "1932 County Commissioners court proceedings," and that the identification of the road in those 1932 proceedings was sufficient to establish its course through Tommy's property. We do not here engage in a collateral review of the adequacy of the 1932 proceedings to establish a county road.[4] Addressing Tommy's challenge to the summary judgment granted

---

[2] For example, an excerpt of a Llano County Appraisal District map was appended as an exhibit to Tommy's motion for partial summary judgment.

[3] Having said that, we note that we are unable to find in the summary judgment record any evidence showing when, or by what procedure, the designation CR-216A came to be applied to that road as it traverses the Allen property.

[4] Tommy's brief contains the argument the order of the commissioners court reflected in the record of the 1932 proceedings as contained in the summary judgment record was void, and thus subject to collateral attack. We do not reach that argument.

8

Boultinghouse, we merely examine the summary judgment evidence to determine whether it conclusively proves the facts declared in the court's summary judgment order. *MMP, Ltd.,* 710 S.W.2d at 60.

Applicable statutes governing creation of a public county road in effect in 1932 stated, in pertinent part:

> Art. 6705. Petition.-The commissioners court shall in no instance grant an order on an application for any new road, or to discontinue an original one, or to alter or change the course of a public road, unless the applicants have given at least twenty days notice by written advertisement of their intended application, posted up at the court house door of the county and at two other public places in the vicinity of the route of such road. All such applications shall be by petition to the commissioners court, signed by at least eight freeholders in the precinct in which such road is desired to be made or discontinued, specifying in such petition the beginning and termination of such road, provided an application to alter or change a road need not be signed by more than one freeholder of the precinct.

> Art. 6706. Preliminary survey.-All roads ordered to be made shall be laid out by a jury of freeholders in the county, to be appointed by the commissioners court. Said jury shall consist of five persons, a majority of whom may proceed, with or without the county surveyor, as ordered by the commissioners court, to lay out, survey and describe such road to the greatest advantage to the public, and so that the same can be traced with certainty. They shall make written report of their proceedings to the next term of said court, and the field notes of such survey or description of the road shall be included therein, and, if adopted, shall be recorded in the minutes of said court.

Tex. Rev. Civ. Stat. Ann. articles 6705, 6706 (Vernon 1925).

The summary judgment record includes a copy of a 1932 petition to the commissioners court calling for establishment of a public road of the 3rd class; a sworn statement regarding notice; a statement granting the petition and appointing a jury of view;

the report of the jury of view; and an order establishing the road.  W. J. Everett, Tommy's grandfather, then owner of the part of the Allen property that Tommy inherited, was among the petitioners and was a member of the jury of view.  The petition contains the notation "Cedar Hollow road," and the order says the road "shall be known as Cedar Hollow road No. ___[.]"

The petition contains the following description of the course of the proposed public road:

> Beginning at Allen Riley's place approximately two miles from Lone Grove on the Lone Grove and Baley Head road, thence approximately one-half mile across Riley's property, thence approximately one-half mile across Schneider's property; thence approximately 200 yards across Mrs. Whitt's property; thence approximately 2 miles across Roger's property, then approximately three and one-half miles across Everett's property, and ending at the San Saba County line, the whole distance being approximately six and one-half miles.

The report of the jury of view contains a list of landowners who, according to the report, "have relinquished the right of way for said road, as will be seen from Conveyances hereto attached." The list also includes a "description of land" for each landowner who relinquished right of way for the road, but that description includes only the original grantee, acreage and abstract number for each tract.  The summary judgment record contains no "Conveyances hereto attached,"[5] nor does it contain field notes or any further description of Cedar Hollow road.

---

[5] In her brief, Boultinghouse explains that "for reasons we will never know, no conveyances were attached to the report."  Andrew testified at trial he spent three days searching for the conveyances in the Llano County clerk's office but was unsuccessful.

10

We find the documents from the 1932 commissioners court proceedings contained in the summary judgment record fail to show conclusively either that CR-216A was established in those proceedings, or that the identification of the road in those 1932 proceedings was sufficient to establish the course of CR-216A through Tommy's property.[6] We turn to the remainder of the summary judgment evidence to determine if conclusive proof, nevertheless, exists.

For her claim that Cedar Hollow road and CR-216A as it crosses Tommy's property are synonymous, Boultinghouse offered the opinion of Terry Baughman, a title examiner for Highland Lakes Title Company. In her affidavit, Baughman averred that by reviewing the Llano County deed records she located the properties of the parties named in the 1932 record and the Allen property. She then compared the Cedar Hollow road description in the 1932 record with a current map of CR-216A and concluded the roads are the same, at least as they cross the Allen property.

An expert's testimony will support summary judgment only if it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have

---

[6] Our conclusion is supported by case law concerning the sufficiency of road descriptions. *See Jameson v. Erwin,* 91 S.W.2d 1129, 1130-31 (Tex.Civ.App.–Fort Worth 1936, no writ) (report of jury of view and order of approval insufficient because of indefinite description of road's terminus and absence of field notes)*; Hill v. Taylor County,* 294 S.W. 868, 870 (Tex.Civ.App.–Eastland 1927, no writ) (description of road insufficient; jury of view's report not in compliance with statute); *Currie v. Glasscock County,* 183 S.W. 1193, 1194-95 (Tex.Civ.App.–El Paso 1916, writ ref'd) (description sufficient). We reiterate, however, that our conclusion on this issue is not that the road made the subject of the 1932 proceeding was not statutorily established a county road. That question is not before us. The scope of our review here is, of course, limited to evidence contained in the summary judgment record.

been readily controverted." Tex. R. Civ. P. 166a(c); *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex. 1991) (per curiam) (summary judgment may be granted on the "uncontroverted testimony of an expert witness if the subject matter is such that a trier of fact would be 'guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.'").

Baughman does not explain how, based on the summary judgment record before us, she was able to compare the Cedar Hollow road description we have quoted with a current map, which she did not attach to her summary judgment affidavit, and opine the road contemplated by the 1932 record is CR-216A as it crosses the Allen property. "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex. 1999); *see Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex. 1997) (conclusory statements by an expert are not sufficient to support or defeat summary judgment).

We conclude that Baughman's affidavit is no evidence that the 1932 Cedar Hollow road and CR-216A, as it existed at the time of the summary judgment proceeding, are one and the same.

Boultinghouse also offered her own affidavit. This affidavit provides some evidence supporting her contention that a locked gate was installed on CR-216A during the late 1980s. But her testimony that "[a]s far as I can remember the road has been where it is now" is no evidence that CR-216A and Cedar Hollow road are synonymous. We find the

12

affidavit testimony of Boultinghouse does not provide conclusive proof of any ultimate fact in issue.

Boultinghouse's summary judgment proof also included a nineteen-page excerpt from the record of the testimony of Gordon Hodges, Llano County road supervisor, at the hearing of Barbara and Andrew's request for a temporary injunction in this case. Boultinghouse offered the excerpt as proof that the county maintained CR-216A from 1976 to 1988, that maintenance ceased when Tommy placed a gate on the road, and the county had not abandoned CR 216-A. While Hodges' testimony supplies some evidence of the bases offered, it is not conclusive proof of the ultimate facts on which Boultinghouse sought summary judgment. Moreover, Hodges also testified he was not aware of any third class roads in Llano County, he could not say that CR-216A was "a legal county road," the commissioners formerly maintained many private roads, and it was the opinion of county commissioner Parker that CR-216A was a private road.

As her final piece of summary judgment evidence, Boultinghouse offered responses to requests for admissions she propounded on defendant Llano County. We find these responses do not support Boultinghouse's motion for summary judgment. In a suit against multiple defendants, evidence in the form of responses to requests for admissions made by one defendant is not admissible against other defendants. *See Texas Supply Center, Inc. v. Daon Corp.,* 641 S.W.2d 335, 338 (Tex. App.–Dallas 1982, writ ref'd n.r.e.) (applying former Rule 169); Tex. R. Civ. P. 198.3.[7]

---

[7] Further, in response to a request for admission served by Boultinghouse, Llano County denied that CR-216A extended onto Tommy's property. Thus, were the County's

13

We also look to Tommy's summary judgment evidence as cross-movant to determine if it supplies conclusive proof supporting the court's declarations. *See Knighton v. IBM Corp.,* 856 S.W.2d 206, 208 (Tex.App.–Dallas 1993, writ denied) (when considering cross-motions, trial court can rely on one party's evidence to supply missing proof in other party's motion).

Tommy's evidence consists of his affidavit with attached maps. The affidavit denies that CR-216A was or is a county road. It avers CR-216A was maintained for a time by Llano County under an agreement between Tommy's parents and the county whereby the county removed caliche from two pits on the Allen property in consideration for maintaining CR-216A, and avers the county ceased maintenance of CR-216A on depletion of the caliche. Tommy's proof does not address the location of Cedar Hollow road and whether it was established as a county road. Tommy's summary judgment evidence provides no evidence on which the court could conclusively reach the declarations in its summary judgment order.

Boultinghouse responded to Tommy's motion for summary judgment with an amended version of her affidavit filed in support of her motion for summary judgment, the excerpt from the temporary injunction hearing testimony of Gordon Hodges, which was attached to her motion for summary judgment, the affidavits of Barbara and Andrew, the affidavit of David Yates, and another copy of the 1932 record.

responses binding on Tommy, this denial controverts the fundamental basis of Boultinghouse's motion for summary judgment.

14

Barbara avers in her affidavit that CR-216A was formerly known as Cedar Hollow road, by 1928 CR-216A was "a well maintained road, and in use by the general public," and CR-216A remains in the same location today as in 1928. But such averments are inconsistent with the 1932 commissioners court proceeding by which a jury of view was appointed to lay out a road. Indulging every inference and resolving any doubts in Tommy's favor, as we must, we cannot find Barbara's affidavit testimony conclusively establishes the facts declared in the trial court's summary judgment order.

Because the trial court's summary judgment order expressly declared CR-216A to have been established through the 1932 exercise of the statutory procedure, we do not address Boultinghouse's other grounds for establishment, by dedication or prescriptive easement. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex. 1993) (when order on summary judgment explicitly specifies the ground relied on for summary judgment ruling, summary judgment can be affirmed only if the theory relied on by the trial court is meritorious).

We find the summary judgment record does not conclusively prove that CR-216A was established in the 1932 proceedings, or that those proceedings established its course through the Allen property. We sustain Tommy's first issue.

Issue Two: Legal and Factual Sufficiency of the Evidence of Prescriptive Easement

15

By part of his second issue, Tommy contends there is no evidence or insufficient evidence of exclusivity or adversity to support the jury's affirmative answer to question one finding a prescriptive easement in favor of Barbara and Andrew.

An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). In deciding a no-evidence challenge we determine whether there is evidence that would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Accordingly we must: (1) credit all favorable evidence that reasonable jurors could believe; (2) disregard all contrary evidence except that which they could not ignore; (3) view the evidence in the light most favorable to the verdict; and (4) indulge every reasonable inference that would support the verdict. *Id*. But if the evidence allows only one inference, we may not disregard it. *Id.*

As distinguished from establishment of a road by express or implied dedication, where the focus is on the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under color of right. *Scott v. Cannon,* 959 S.W.2d 712, 721 (Tex.App.–Austin 1998, pet. denied). An easement by prescription is established by the open, notorious, hostile, adverse, uninterrupted, exclusive and continuous use of the servient estate for a period of more than ten years, and the absence of any of these elements is fatal to the prescriptive claim. *Davis v. Carriker,* 536 S.W.2d 246, 250 (Tex.Civ.App.–Amarillo, 1976, writ ref'd n.r.e.). Use of property with the

16

owner's express or implied permission or license will never ripen into a prescriptive easement no matter how long the use continues. *Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex. 1987); *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 626-27 (1950).

The use of the property must be exclusive, in that the claimant excluded or attempted to exclude all other persons, especially the property owner, from using the same land for the same purpose. *Scott,* 959 S.W.2d at 721-22. "It has long been the law in Texas that when a landowner and the claimant of an easement both use the same way, the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse." *Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979); *Vrazel,* 725 S.W.2d at 711 (exclusivity not met when landowner and claimant both used the road); *cf. Minh Thu Tran v. Macha,* 213 S.W.3d 913, 915 (Tex. 2006) (citing *Brooks* with approval for this proposition in adverse possession case). Joint continuous use, without a legally adverse or hostile act, is not sufficient. *Mack v. Landry,* 22 S.W.3d 524, 532 (Tex.App.–Houston [14th Dist.] 2000, no pet.). Moreover, the owner of the servient estate must have actual or constructive notice that there was an adverse and hostile claim against the property. *Scott,* 959 S.W.2d at 721.

Barbara and Andrew acquired their interests in the Barker Hill Pasture in 1970 and have regularly used the Barker Hill Pasture Road to reach their property. There was also some evidence that their predecessor in title, Barbara's mother, used the Barker Hill Pasture Road. Barbara and Andrew never requested permission to use the road nor was their use expressly barred. Barbara never saw Tommy or his parents on the road. Andrew testified he did not know if Tommy used Barker Hill Pasture Road but could not contradict

17

Tommy if he testified that he used the road. Tommy testified no one tried to exclude him from the Barker Hill Pasture Road, which he said was the only access to the east side of his pasture. He used the road when coming from the south and his deer hunt lessees used it to reach the east side of his property. Barker Hill Pasture Road also provided access to a communications tower. When asked about his exclusive use of the road Andrew agreed that he did not attempt to fence the road and that it was available for use by anyone on Tommy's property. Andrew could name no measures he undertook to prevent others from using the road.

Andrew claimed a right to use Barker Hill Pasture Road beginning when he was approximately age eight in the early 1950s because his father and grandfather used the road and they cut limbs along the way. Andrew did not notify anyone of this claim until his 1990 conversation with Tommy at the 1987 gate. At that time, Barbara and Andrew complained of the locked gate, apparently precipitating Tommy's statement, "your way to go is down by [Millie Ward's]." It was then Andrew told Tommy he and Barbara had an easement over the Barker Hill Pasture Road.

Thereafter, on their trips from Austin to the Barker Hill Pasture during the 1990s, Barbara and Andrew continued using the Barker Hill Pasture Road. And problems with the locked gate persisted. At times, Barbara and Andrew found obstructions such as logs on the Barker Hill Pasture Road, which they removed. For a time, Tommy left the gate key in a mailbox but at other times the key could not be located. It was then necessary for Barbara and Andrew to call Tommy to come unlock the gate. At times, Tommy did not engage the lock but left it on the gate. On two such occasions, Andrew removed the lock

18

and had a locksmith make a duplicate key. According to Andrew, in 2002 he and Tommy had another conversation at the gate. This time Tommy said he might have to sell his property and if this occurred Barbara and Andrew could no longer use the Barker Hill Pasture Road. This led Barbara and Andrew to file suit.

Barbara and Andrew contend the ten-year prescriptive limitation period began in 1990 when Andrew told Tommy he and Barbara possessed an easement. Relying on *Scott,* 959 S.W.2d at 717-18, they argue this was a sufficient independent act establishing hostility and adversity and removing the case from the long-standing Texas rule that joint use of a way with the property owner is fatal to the claim of a prescriptive easement because it is consistent with permissive use in a non-adverse manner. *Brooks,* 578 S.W.2d at 673-74; *Stallman v. Newman,* 9 S.W.3d 243, 246 (Tex.App.–Houston [14th Dist.] 1999, pet. denied); *Wilson v. McGuffin,* 749 S.W.2d at 606, 610 (Tex.App.–Corpus Christi 1988, writ denied); *Hudson v. Gaines,* 501 S.W.2d 734, 738 (Tex.Civ.App.–Corpus Christi 1973, no writ).

In *Scott,* the Scotts filed an affidavit in the Hays County clerk's office in 1964, claiming a road across the Cannons' property was public. 959 S.W.2d at 717-18. The Cannons discovered the affidavit in 1972 and informed the Scotts that the road was not public but took no further action. *Id.* Subsequent joint use by the Scotts and Cannons was not disputed. However, the Scotts argued their facts did not fall under the general rule that joint use is fatal to a prescriptive easement because the discovery of the affidavit claim in 1972 placed the Cannons on notice of the Scotts' claim of right to use the road. The Austin

19

court agreed, finding the Scotts' claim of right transformed a permissive use into an adverse use, and together with evidence of their subsequent use of the road, "created the adversity needed to begin the [ten-year] prescriptive period." *Id*. at 723. Because the Cannons took no action from 1972 until the lawsuit was filed in 1996, the appellate court determined a limited prescriptive easement was established. *Id.*

*Scott* is readily distinguishable from the facts at hand. Assuming, without deciding, that Andrew's statement to Tommy on one occasion that he claimed an easement is the type of "distinct and positive assertion" required to establish adversity of use under *Scott* and *Wiegand v. Riojas,* 547 S.W.2d 287, 291 (Tex.Civ.App.–Austin 1977, no writ)*,* the evidence of Andrew and Barbara's use of the Barker Hill Pasture Road after the 1990 statement is nothing like that described in *Scott*. There, the Scotts had unfettered use of the disputed road after the 1972 assertion of their claim of right, while the Cannons decided it was "'a good time to keep quiet.'" 959 S.W.2d at 722-23. Here, after Andrew told Tommy he claimed an easement, it is undisputed Tommy kept the gate leading into the Allen property locked. Initially Tommy used a combination lock and provided Barbara the combination. But after the lock disappeared it was replaced with a keyed lock. At times Tommy provided keys to the lock for Andrew and Barbara, at other times it was necessary for them to call Tommy to unlock the gate, and on two or three occasions Andrew made a key without Tommy's knowledge. But even the broadest reading of the *Scott* case will not support the creation of a prescriptive easement in favor of Andrew and Barbara by virtue of their entry onto the Allen property through Tommy's locked gate. *See Wiegand,* 547

S.W.2d at 290 (hostile claim created by removing fence and cutting locks interrupted by subsequent fencing and locked gate).

We find the evidence legally insufficient to sustain the jury's finding of prescriptive easement. Accordingly, we do not conduct a factual sufficiency review. Tommy's second issue is sustained.

Sub-issue 3.A: Admissibility of Statement of Tom Allen

In sub-issue 3.A., Tommy complains the trial court erred when it allowed Andrew to testify that in his presence Tom Allen referred to the disputed road as "your road," as such was hearsay evidence, was not disclosed in discovery, and was a violation of the "Dead Man Statute." Tex. R. Evid. 601(b). The court overruled the objections finding the statement admissible as a declaration against pecuniary interest. Tex. R. Evid. 803(24).

Rulings concerning the admissibility of evidence are committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000). A trial court does not abuse its discretion if it reaches the right result, even for the wrong reason. *Luxenberg v. Marshall,* 835 S.W.2d 136, 141-42 (Tex.App.–Dallas 1992, orig. proceeding).

Tommy contends Barbara and Andrew failed to disclose the statement of Tom Allen in response to an interrogatory. However, this is not the objection Tommy made at trial. Rather Tommy objected that Barbara and Andrew failed to disclose "the factual basis supporting their claims," an objection which generally tracks the language of a request for

21

disclosure. *See* Tex. R. Civ. P. 194.2 (c) (party may *inter alia* obtain the factual bases of the responding party's claims). Responding to the objection, counsel for Barbara and Andrew read for the trial court what was apparently his clients' response to a request for disclosure. Because the objection now urged was not presented to the trial court, it was not preserved for our review. Tex. R. App. P. 33.1(a).

Turning to the hearsay objection, Barbara and Andrew claimed an easement by prescription and estoppel. Proof of an easement by estoppel requires proof of a representation relied upon by the claimant. Barbara and Andrew offered the statement of Tom Allen as proof of a representation on which they relied. That Tom Allen made the statement is thus an operative fact. Not being offered to prove the truth of the matter stated, but simply that the statement was made, Andrew's testimony was not hearsay. *See Cherokee Water Company v. Forderhause,* 727 S.W.2d 605, 614 (Tex.App.–Texarkana 1987), *rev'd on other grounds,* 741 S.W.2d 377 (Tex. 1987) (testimony of operative fact not hearsay).

Finally, Tommy concedes the "Dead Man Statute" is not applicable to these facts and we agree. *See* Tex. R. Evid. 601(b).

Finding the statement of Tom Allen admissible as an operative fact, we do not consider whether it was properly admitted as a declaration against pecuniary interest.

Because Tommy conditioned this sub-issue on a claim of wrongly admitted evidence, and as we find the trial court did not abuse its discretion in admitting the evidence, we do

22

not reach the remainder of the issue which challenges the legal sufficiency of the remaining evidence. We overrule Tommy's Sub-issue 3.A.

Sub-issue 3.B.: Factual Sufficiency of Evidence Supporting
              Easement by Estoppel Finding

In sub-issue 3.B., Tommy challenges the factual sufficiency of the evidence supporting the jury's implied findings of a representation and reliance supporting an easement by estoppel.

In reviewing the factual sufficiency of the evidence, we first examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986), and, having considered and weighed all of the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony, *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.), we may not substitute our opinion for the trier of fact merely because we might have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988).

An easement confers on one person the right to use the land of another for a specific purpose. *Hubert v. Davis,* 170 S.W.3d 706, 710 (Tex.App.–Tyler 2005, no pet.). An easement is a "liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil." *Miller v. Babb,* 263 S.W. 253, 254 (Tex. Comm'n App. 1924, judgm't

23

adopted). It is a burden on one estate, the servient estate, for the benefit of another, the dominant estate. *Id.*

The statute of frauds generally requires a writing to establish an easement. *Machala v. Weems,* 56 S.W.3d 748, 756 (Tex.App.–Texarkana 2001, no pet.); *see Miller,* 263 S.W. at 254 (easement must be created by grant and not parol agreement). But the doctrine of equitable estoppel provides an exception to prevent injustice and protect innocent parties from fraud. *Storms v. Tuck,* 579 S.W.2d 447, 451 (Tex. 1979); *Machala,* 56 S.W.3d at 756. The essence of the doctrine of easement by estoppel is the owner of a servient estate may be estopped to deny the existence of an easement by making representations that are acted on by the owner of the dominant estate. *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 209 (Tex. 1962).

Easement by estoppel requires proof of three elements: (1) a representation of the easement communicated, either by words or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms,* 579 S.W.2d at 452; *Stallman,* 9 S.W.3d at 246. "In order to create an easement by estoppel, something must be said or done by the owner of the servient estate at the time of the grant of the dominant estate that induces the acceptance of the grant." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 872 (Tex.App.–Austin 1988, writ denied). An easement by estoppel is binding on the successors in title to the servient estate if reliance on the existing easement continues. *Holden v. Weidenfeller,* 929 S.W.2d 124, 131 (Tex.App.–San Antonio 1996, writ denied).

24

The gravity of a judicial means of acquiring an interest in the land of another solely by parol requires equitable estoppel be strictly applied. *See Moore County v. Bergner,* 526 S.W.2d 702, 706 (Tex.Civ.App.–Amarillo 1975, no writ). Thus, an estoppel should be certain, precise and clear. *See McAnally v. Friends of WCC, Inc.,* 113 S.W.3d 875, 879 (Tex.App.–Dallas 2003, no pet.) (*citing Linney v. Wood,* 66 Tex. 22, 17 S.W. 244, 246 (1886)) (estoppel by deed). Authority for application of the doctrine is "rare and nebulous" outside a narrow band of cases consisting of those that concern: (1) the dedication of a street, alley, or square; (2) an owner selling land with reference to a map or plat; and (3) a seller of land who allows its purchaser to expend money on an alleged servient estate. *Drye,* 364 S.W.2d at 209-10.

We begin with Tommy's challenge of the evidence supporting the representation element. The charge defined easement by estoppel as *inter alia* requiring communication of the existence of an easement to the claimants, Barbara and Andrew.

In 1970, Andrew and his now-deceased father constructed a cabin in the Barker Hill Pasture. They hauled the materials over CR-216A and the Barker Hill Pasture Road. After construction began, Tom Allen asked Andrew and his father if they needed help "cutting some limbs over there on your road." Following the death of Tom Allen, Iva Allen telephoned Andrew on one or more occasions, asking that when he went to town he not "go out your way" but instead come to her house and pick up mail for delivery to the post office. Barbara and Andrew assert these two statements were representations of their ownership

25

of an easement across the Barker Hill Pasture Road and in reliance on the statements they expended additional sums improving the cabin and out buildings on the Barker Hill Pasture.

Barbara and Andrew further argue Tommy is estopped to deny an easement because his predecessors in title silently watched Barbara and other members of her family use the Barker Hill Pasture Road since 1929 and make valuable improvements to the Barker Hill Pasture. They conclude, therefore, Tommy's "predecessors in title were estopped to deny use of the road to [Barbara and Andrew]. When Tommy Allen inherited the servient estate, he inherited the burdens that had existed since before 1929."

Andrew testified of a right to use the Barker Hill Pasture Road, as opposed to a permissive use, existing since his childhood in the early 1950s. The right Andrew claimed originated in use of the road by his father and grandfather. Andrew first communicated his claimed right to another through his above noted conversation with Tommy at the gate in 1990. Barbara recalled as an eleven-year-old, in 1929, traveling by horseback from Barker Hill Pasture over a road that, for this discussion, we assume is Barker Hill Pasture Road. She did not ask permission because, according to Barbara, it "was the only way I could get up there."

Barbara and Andrew did not improve the Barker Hill Pasture Road although it appears Andrew, his father, and grandfather cut tree limbs along the way. Tom Allen was aware Andrew and his father constructed a cabin on the Barker Hill Pasture and Iva Allen was aware that Barbara and Andrew sometimes spent time in the cabin or on their property.

26

The Barker Hill Pasture road was not used exclusively by Barbara and Andrew. Rather, it was Tommy's only access to the east side of his pasture and was used by his hunting lessees. Tommy testified his family and the family of Andrew and Barbara had always permissively passed across the ranch property of one another. Use of the Barker Hill Pasture Road by Barbara and Andrew depended on their access to CR-216A. We have already noted Tommy's control of access to the Allen property during the 1990s.

Barbara and Andrew live in Austin and the record does not point clearly to the regularity of their presence at the Barker Hill Pasture. During the 1980s, Barbara believed she averaged fifteen to twenty visits a year. Andrew recalled frequent trips to the Barker Hill Pasture including summers and the Christmas holidays. Between 1970 and 1981 Sidney Allen maintained cattle on the Barker Hill Pasture which sometimes required daily trips. During the early 1980s, Barbara depended on Andrew for transportation to the Barker Hill Pasture for extended visits.

According to Andrew, prior to 1970 his family used the Barker Hill Pasture Road or the route through Millie Ward's place to access the Barker Hill Pasture. After 1970, they exclusively used the Barker Hill Pasture Road. It was not disputed that the way through Millie Ward's property was longer and the terrain rougher than via the Barker Hill Pasture Road.

Barbara and Andrew rely on this court's decision in *Wallace v. McKinzie,* 869 S.W.2d 592 (Tex.App.–Amarillo 1993, writ denied). There the McKinzies claimed an easement by estoppel over a 400-yard road that was the exclusive means of ingress and egress to their

27

landlocked property. The evidence at trial revealed for over seventy years the McKinzies used this road without objection from the Wallaces and the Wallaces never notified the McKinzies they could not use the road. Based on this evidence this court held:

> [T]hrough their permissive and acquiescing behavior, the Wallaces have engaged in representations by their conduct. This evidence alone constitutes legally sufficient evidence (*i.e.,* some evidence) to support the jury's finding that the Wallaces made a representation to the McKinzies that certain rights exist to use the Wallaces' property.

869 S.W.2d at 596.

The holding embodies a crucial distinction between *McKinzie* and the case at bar. In *McKinzie* the jury was charged that the first element of easement by estoppel, the representation element, was, "the landowner or a predecessor to his interest makes a representation to the adjacent landowner or a predecessor to the adjacent landowner's interest that *certain rights* exist to use the landowner's property." 869 S.W.2d at 595 (emphasis supplied). The jury was not asked if the McKinzies relied on a representation by the Wallaces that the McKinzies possessed an easement over the access road. As Chief Justice Reynolds' dissenting opinion in the case makes clear, because there was no objection to the charge, the parties were left with an implied jury finding that a representation of the existence of "certain rights" sufficed to create an easement.[8] 869 S.W.2d at 599-600 (Reynolds, CJ, dissenting).

---

[8] A "right" to use the property, of course, could include a mere license.

Here, the court defined the representation element of easement by estoppel as, "a representation that an easement exists is communicated by the landowner to the person claiming the easement." The charge does not define easement and instructs the jury that a representation may be verbal or by conduct, but "[a]cquiescence alone is not sufficient." Importantly, the jury was compelled to find the existence or not of an easement, not simply a right of use over the Allen's property for access to the Barker Hill Pasture.

Andrew and Barbara contend the silent acquiescence by Tommy and his family to their family's use of the Barker Hill Pasture Road combined with the "your road" and "your way" statements of Tom and Iva Allen provide factually sufficient evidence supporting the existence of an easement by estoppel. We disagree. We decline to apply the holding of *McKinzie* in this case for the reasons we have discussed. We find the "your road" and "your way" statements insufficient as representations that an easement existed. Having considered and weighed all of the evidence, we find the evidence supporting the existence of an easement by estoppel, under the court's charge, to be so weak as to make the jury's finding clearly wrong and unjust. *Garza,* 395 S.W.2d at 823.

We sustain Tommy's sub-issue 3.B, and do not reach his remaining arguments under issue three.

Issue 4: Attorney's Fees

By his fourth issue, Tommy challenges the award of attorney's fees to Barbara, Andrew, and Boultinghouse. The trial court awarded attorney's fees to the plaintiffs and intervener on their claims for declaratory relief. *See* Tex. Civ. Prac. & Rem. Code Ann. §

29

37.009 (Vernon 1997). In a declaratory judgment action, attorney's fees may be awarded as are "equitable and just." *Id.* Because we reverse and remand the status of CR-216A question, raised by motion for summary judgment, render judgment that no easement by prescription exists, and remand for retrial the question of easement by estoppel, we sustain Tommy's fourth issue and vacate the award for attorney's fees. The question of what, if any, amount of attorney's fees to award the parties is remanded to the trial court for determination on retrial.

Conclusion

Having sustained Tommy's issues 1, 2, 3.B. and 4, we reverse and render in part and remand in part for proceedings consistent with this opinion.

James T. Campbell
Justice
