NO. 12-10-00273-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

TIMOTHY ERWIN,                                      §                      APPEAL
FROM THE 294TH

APPELLANT

                                                                        

V.                                                                    §                      JUDICIAL
DISTRICT COURT 

 

SCOTT FERRIS,

APPELLEE                                                   §                      VAN
ZANDT COUNTY, TEXAS







MEMORANDUM
OPINION

            Timothy Erwin appeals the trial court’s summary judgment entered in favor
of Scott Ferris.  In three issues, Erwin argues that the trial court erred in
denying his motion to compel arbitration and in granting Ferris’s motion for
summary judgment.  We affirm.

 

Background

Scott
Ferris and Timothy Erwin are neighbors.  In the late 1990s, through separate
transactions, Ferris bought a house and Erwin bought the adjoining property and
barn from Leonard and Ann Foster.  Erwin believed that the land he purchased granted
him an easement in Ferris’s driveway by which he could access his barn.  For
several years, Erwin used Ferris’s driveway consistent with this belief.

By
June 2006, Ferris no longer wanted Erwin to use his driveway.  Believing that
no easement existed, Ferris sued Erwin for monetary damages and injunctive
relief.  Erwin countersued.  

The
trial court ordered that the case be mediated.  At the mediation, the parties reached
a compromise, and both Ferris and Erwin signed a settlement agreement wherein
Ferris agreed to sell his house “as is” to Erwin for $127,500.[1] 
Among other provisions of the settlement agreement, Erwin could, at his
election, have the house inspected.  Further, the real estate contract was
required to include reasonable and customary terms regarding the parties’ ability
to terminate the contract or submit to arbitration if the house was determined not
to be in substantially good condition.  Erwin’s counsel agreed to draft a real
estate contract pertaining to the sale.

The
parties sought to complete the transaction by May 30, 2007.  However, Erwin did
not send Ferris a proposed real estate contract until July 11, 2007.  The
proposed contract included an arbitration clause, but neither party signed the
proposed contract.

Thereafter,
Erwin had the house inspected.  The inspector noted that the house needed significant
repairs.  Erwin argued that the settlement agreement required Ferris to pay for
the repairs because the property was not in “substantially good condition”
without the repairs being made.  Ferris responded that Erwin agreed to purchase
the property “as is,” and, as a result, could either purchase the property
without the repairs being made or terminate the settlement agreement.

After
it became apparent that the parties were at an impasse, Erwin amended his
counterclaim and alleged that Ferris breached the settlement agreement.  Ferris
responded by amending his petition and including an alternative allegation that
Erwin breached the settlement agreement.  Ferris also filed an amended answer
to Erwin’s counterclaim in which he alleged that there was no valid contract
between the parties and that his performance under the alleged contract was
excused because of a prior material breach by Erwin.

Subsequently,
Erwin filed a motion to compel arbitration.  The trial court denied Erwin’s
motion to compel arbitration because Erwin failed to establish the existence of
an arbitration agreement that governed the dispute.  Erwin continued to pursue
the matter before the trial court.  Erwin again amended his petition to include
only a claim that Ferris breached the settlement agreement.

In
June 2009, Ferris filed a combined no evidence and traditional motion for
summary judgment concerning both his claims for affirmative relief and Erwin’s
claims against him.  Erwin responded.  On May 28, 2010, the trial court granted
Ferris’s motion for summary judgment, but declined to award Ferris damages or
attorney’s fees.[2] 
Erwin filed a motion for new trial, which was denied.  This appeal followed.

 

Arbitration

In
his third issue, Erwin argues that the trial court erred by denying his motion
to compel arbitration.  Ferris responds that (1) there is not a valid and
enforceable arbitration agreement, (2) alternatively, the arbitration agreement
does not encompass Ferris’s claims against Erwin, and (3) Erwin waived the
issue by failing to pursue an interlocutory appeal.[3]

Standard
of Review and Governing Law

The
standard of review for determining a trial court’s ruling on a motion to compel
arbitration is abuse of discretion.  See Perry Homes v. Cull,
258 S.W.3d 580, 598 (Tex. 2008).  We defer to a trial court’s factual findings
if they are supported by the evidence.  See id.  Because a
trial court has no discretion to apply the law incorrectly, we do not defer to
the trial court on questions of law.  Id.

Arbitration
agreements are valid, irrevocable, and enforceable to the same extent as any
other contract.  See 9 U.S.C.A. § 2 (2011).  We first determine whether
the arbitration agreement satisfies Texas law governing contract formation.  See
In re Poly-America, L.P., 262 S.W.3d 337, 347 (Tex. 2008); see
also In re Morgan Stanley & Co., 293 S.W.3d 182, 187 (Tex. 2009)
(courts have authority and responsibility to determine existence of a contract
containing relevant arbitration agreement).  Once we determine the existence of
an enforceable arbitration agreement, the strong presumption from federal law in
favor of arbitration requires that doubts be resolved in favor of arbitration. 
See Poly-America, L.P., 262 S.W.3d at 348.  

            Unless
disputed issues of fact require a full evidentiary hearing, a trial court
should decide a motion to compel arbitration summarily.  Id. at
355.  Ordinarily, the hearing at which a motion to compel arbitration is
decided involves application of the arbitration agreement terms to undisputed
facts amenable to proof by affidavit.  Jack B. Anglin Co., Inc. v. Tipps,
842 S.W.2d 266, 269 (Tex. 1992).  Thus, the trial court generally decides whether
to compel arbitration on the basis of affidavits, pleadings, discovery, and
stipulations.  Id.  However, if the facts are disputed, the trial
court must conduct an evidentiary hearing to determine the disputed facts.  Id.


The
elements necessary to form a binding contract are (1) an offer, (2) acceptance
of the offer, (3) a meeting of the minds, (4) the parties’ consent to the
terms, (5) execution and delivery with the intent that it be mutual and
binding, and (6) consideration.  Advantage Physical Therapy, Inc. v.
Cruse, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no
pet.).  Whether an agreement was reached is a question of fact.  Id.


Existence
of a Valid Arbitration Agreement

In
the instant case, the Memorandum of Settlement between the parties stated, in pertinent
part as follows:  “[real estate contract] to [include reasonable and] customary
terms to terminate or submit to arbitration to resolve such issue, if any if
not substantial[ly] in good condition.”  Moreover, the proposed real estate
contract contained an arbitration clause that stated as follows: 

 

It is specifically agreed by the parties that the
Buyer is purchasing the property “As Is” subject to the terms described herein
should the property not be in substantially good condition, the Buyer may elect
to terminate this agreement, or, in the alternative to submit to arbitration to
resolve any issue contained herein to include purchase price.  The arbitrator
shall be Tom J. Brown of the firm, Brown, Bowman[,] and Smith.

 

 

In
his motion to compel arbitration, Erwin asserted that he was “ready and willing”
to arbitrate whether the property is in substantially good condition, but that Ferris
had refused to participate in the arbitration.  Erwin further requested that
the trial court appoint Tom Brown as arbitrator.  In his motion to compel
arbitration, Erwin conceded that, pursuant to the settlement agreement of the
parties, his counsel agreed to prepare a real estate contract that included a
“reasonable and customary” arbitration clause.  However, while Erwin included the
settlement agreement as an exhibit to his motion, he did not attach a real
estate contract to his motion.  In fact, in our review of the record, we have found
no evidence that a real estate contract was ever signed by the parties.[4] 
Thus, there is no evidence of record supporting either the wording of a
“reasonable and customary” arbitration clause or the claims that this clause
would cover.

Ferris
responded to Erwin’s motion by arguing that there was no valid arbitration
agreement.  Ferris further contended that the only potential arbitration
agreement was located in the settlement agreement and that the language of this
agreement is too ambiguous to be enforceable.  Finally, Ferris argued that an
arbitration could only result in an “as is” sale for the original agreed price
of $127,500 or the termination of the contract.  But the arbitration could not,
according to Ferris, result in the agreed price being reduced because of needed
repairs.  Ferris attached to his response a letter from Erwin’s counsel in
which Erwin’s counsel stated, “[I]t is my position that the arbitrator
determines not only whether the house is in good condition…, but [also] … the
amount to be deducted from the sales amount for purposes of repair.”  Ferris
also raised two alternative arguments to the trial court.  First, Ferris
disagreed with Erwin’s position and asserted that even if arbitration were ordered,
the only issue should be whether the property is in substantially good
condition.  Second, Ferris argued that the arbitrator should be appointed by
the trial court because the only potential arbitration agreement did not
identify the arbitrator.

Based
on our review of the record, Erwin failed to present any evidence that the arbitration
clause contained in the proposed real estate contract was agreed upon by the
parties.  See Advantage Physical Therapy, Inc., 165 S.W.3d
at 24.  Without a signed real estate contract, the only reference to arbitration
is in the settlement agreement.  That reference to arbitration is an agreement
to include an arbitration clause in a subsequent agreement.  But it is not an
agreement to arbitrate.  See id.  Because the trial court
properly found that there was no valid arbitration agreement between the
parties, we hold that it correctly denied Erwin’s motion to compel
arbitration.  

Moreover,
to the extent that Erwin’s third issue can be interpreted to be  an argument
that the trial court failed to hold an evidentiary hearing on his motion to
compel, that claim fails.  Erwin’s brief does not contain appropriate citations
to the record indicating that a request for hearing ever occurred.  See Tex. R. App. P. 38.1(i).  Furthermore,
as a prerequisite to presenting a complaint for appellate review, Erwin was
required to present the complaint to the trial court by timely request,
objection, or motion that stated the grounds for the ruling that Erwin
requested from the trial court with sufficient specificity to make the trial
court aware of the complaint, unless the specific grounds were apparent from
the context.  See Tex. R. App. P.
33.1.  From our review of the record and of Erwin’s brief, there is no
indication that Erwin requested a hearing on his motion to compel arbitration. 
Thus, any error by the trial court in failing to conduct a hearing was waived. 
See id.

Erwin’s
third issue is overruled.

 

Motion for
Summary Judgment

In
his first issue, Erwin complains that the trial court erred in granting summary
judgment in Ferris’s favor because Erwin presented a genuine issue of material fact
regarding whether Ferris breached the settlement agreement.  In his second
issue, Erwin complains that the summary judgment was improper because he
presented a genuine issue of material fact concerning whether he obtained an
easement by estoppel or a prescriptive easement. 

 Standard of Review

            The
movant for traditional summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  When the
movant seeks summary judgment on a claim in which the nonmovant bears the
burden of proof, the movant must either negate at least one essential element
of the nonmovant’s cause of action or prove all essential elements of an
affirmative defense.  See Randall's Food Markets, Inc. v. Johnson,
891 S.W.2d 640, 644 (Tex. 1995).  When the movant seeks summary judgment on a
claim in which the movant bears the burden of proof, the movant must prove all
essential elements of the claim.  Winchek v. Am. Express Travel Related
Servs. Co., 232 S.W.3d 197, 201 (Tex. App.–Houston [1st Dist.] 2007, no
pet.).  Once the movant has established a right to summary judgment, the burden
of proof shifts to the nonmovant to respond to the motion and present to the
trial court any issues that would preclude summary judgment.  See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678-79 (Tex. 1979).   

             Additionally,
after an adequate time for discovery has passed, a party without the burden of
proof at trial may move for summary judgment on the ground that the nonmoving
party lacks supporting evidence for one or more essential elements of its
claim.  See Tex. R. Civ. P. 166a(i). 
Once a no evidence motion has been filed in accordance with Rule 166a(i), the
burden shifts to the nonmovant to bring forth evidence that raises a fact issue
on the challenged evidence.  See Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004).  We review a no evidence motion for summary
judgment under the same legal sufficiency standards as a directed verdict.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003).  A no
evidence motion is properly granted if the nonmovant fails to bring forth more
than a scintilla of probative evidence to raise a genuine issue of material
fact as to an essential element of the nonmovant’s claim on which the nonmovant
would have the burden of proof at trial.  Id. at 751.  If the
evidence supporting a finding rises to a level that would enable reasonable,
fair minded persons to differ in their conclusions, then more than a scintilla
of evidence exists.  Id.  Less than a scintilla of evidence
exists when the evidence is so weak as to do no more than create a mere surmise
or suspicion of a fact, and the legal effect is that there is no evidence.  Id.

            In
both traditional and no evidence summary judgment motions, we review the entire
record de novo and in the light most favorable to the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion.  See
 Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex. 1999).  All theories in support of or in opposition to a motion
for summary judgment must be presented in writing to the trial court. See
Tex. R. Civ. P. 166a(c).  If the
trial court’s order does not specify the grounds on which it granted summary
judgment, we affirm the trial court’s ruling if any of the theories advanced in
the motion is meritorious.  State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993).  When a party moves for both a traditional and
a no evidence summary judgment, generally we first review the trial court’s
summary judgment under the no evidence standards of Rule 166a(i).  Ridgway,
135 S.W.3d at 600.  If the no evidence summary judgment was properly granted,
we do not reach arguments made under the traditional motion for summary
judgment. See id. at 602.

Breach of
Settlement Agreement

We
first address whether the trial court properly granted Ferris’s summary
judgment as to Erwin’s claim that Ferris breached the settlement agreement.

             A
settlement agreement is simply a contract between the parties; a breach of
settlement agreement cause of action is identical to a breach of contract cause
of action.  See Padilla v. LaFrance, 907 S.W.2d 454, 461 (Tex.
1995).  To establish a breach of contract, Erwin was required to prove the
existence of a valid contract, his performance or tendered performance under
the contract, breach of the contract by Ferris, and damages sustained as a
result of the breach.  Winchek, 232 S.W.3d at 202.  As set forth
previously, the elements necessary to form a binding contract are (1) an offer,
(2) acceptance of the offer, (3) a meeting of the minds, (4) the parties’
consent to the terms, (5) execution and delivery with the intent that it be
mutual and binding, and (6) consideration.  See Advantage Physical
Therapy, Inc., 165 S.W.3d at 24.

            An
appellate court reviews a trial court’s construction of an unambiguous contract
de novo.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995
S.W.2d 647, 650 (Tex. 1999).  In performing a de novo review, we exercise our
own judgment and redetermine each legal issue.  Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1999).  When construing a written contract, courts
ascertain the intent of the parties as expressed in the instrument.  Nat’l
Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d
517, 520 (Tex. 1995).  Courts examine and consider the entire writing in an
effort to harmonize and give effect to all the provisions of the contract so
that none will be rendered meaningless.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  If there is no ambiguity in the instrument, its
construction is a question of law for the court.  See id. 
Interpretation of a contract becomes a fact issue, to be resolved by extrinsic
evidence, only when application of pertinent rules of construction leaves a
genuine uncertainty as to which of two meanings is proper.  Id.
at 393–94.

When
a buyer purchases something “as is,” the buyer agrees to make his own appraisal
of the bargain and to accept the risk that he may be wrong.  Prudential
Ins. v. Jefferson Assoc., 896 S.W.2d 156, 161 (Tex. 1995).  Thus,
subject to exceptions not applicable in this case, a valid “as is” agreement
prevents a buyer from holding a seller liable if the item purchased turns out
to be worth less than the price paid.  Id.  In Prudential,
the supreme court considered this issue in light of similar factual
circumstances, and in so doing, stated as follows:

 

[The buyer] has agreed to take the full risk of
determining the value of the purchase.  He is not obliged to do so; he could
insist instead that the seller assume part or all of that risk by obtaining
warranties to the desired effect.  If the seller is willing to give such
assurances, however, he will ordinarily insist upon additional compensation. 
Rather than pay more, a buyer may choose to rely entirely upon his own
determination of the condition and value of his purchase.

 

Id.

            Here,
in his no evidence motion for summary judgment, Ferris claimed that Erwin had
no evidence to support any element of his breach of settlement agreement cause
of action.  Thus, Erwin had the burden to bring forth more than a scintilla of
evidence underlying each challenged element.

Despite
his burden to do so, Erwin failed to bring forth evidence that Ferris breached
the contract.  Erwin contends that Ferris breached the contract because Ferris
was unwilling to accept less than the agreed “as is” price even though Erwin’s
inspection of the house uncovered the need for significant repairs.  We
construe Erwin’s argument as an allegation that the contract can be read to
require Ferris to take less than the “as is” price for the house if the house
is not in substantially good condition.  Yet, Erwin’s argument is foreclosed by
the plain language of the contract.  Simply put, Ferris had no contractual
obligation to accept less than the agreed “as is” price.

Erwin
agreed to purchase Ferris’s house “as is.”  He also negotiated the ability to
inspect the house first to ensure that the house was in substantially good
condition.  If he decided the house was not in substantially good condition, Erwin
had the contractual right to terminate the contract.  He did not, however, have
the contractual right to seek a reduction in the price.  Only by Ferris’s
agreeing to sell Erwin the house at a lesser price, and subsequently entering
into another contract with Erwin, could Ferris be required to sell Erwin the
house for less than the agreed upon “as is” price.  There is no evidence that Ferris
agreed to take less than the initially bargained-for price.  There is further
no evidence that Erwin agreed to pay the initially agreed upon price.  Rather,
the evidence reflects that Erwin determined that the repairs made the bargain
less desirable for him.

The
trial court correctly construed the contract as giving Erwin flexibility to
terminate the contract after his inspection and, further, that this right to
terminate did not affect Ferris’s ability to require the full “as is” price to consummate
the sale of the house.  Because Erwin presented no evidence that Ferris was
under an obligation to accept less money to account for repairs Erwin deemed
necessary, Erwin presented no evidence that Ferris breached the settlement
agreement.  Thus, the trial court properly granted Ferris’s no evidence motion
for summary judgment on Erwin’s breach of settlement agreement cause of
action.  Erwin’s first issue is overruled.[5]  

Easement
by Estoppel and Prescriptive Easement

            With
regard to Ferris’s claims for affirmative relief, Erwin argues that Ferris was
not entitled to summary judgment because Erwin raised a genuine issue of material
fact concerning whether Erwin obtained an easement by estoppel or a
prescriptive easement.

 

 

            Easement
by Estoppel

            Generally,
easements must be in writing.  Machala v. Weems, 56 S.W.3d 748,
757 (Tex. App.–Texarkana 2001, no pet.).  An easement by estoppel is an
exception to this general rule.  See Cleaver v. Cundiff,
203 S.W.3d 373, 375 (Tex. App.–Eastland 2006, no pet.).  To prove an easement
by estoppel, the proponent is required to demonstrate that (1) there was a
representation communicated, either by word or action, to him, (2) he believed
the communication, and (3) he relied on the communication to his detriment.  See
Holden v. Weidenfeller, 929 S.W.2d 124, 131 (Tex. App.–San
Antonio 1996, writ denied).  Once created, an easement by estoppel is binding
upon successors in title if reliance upon the existence of the easement
continues.  Id.  The representations creating an easement by
estoppel may be verbal or nonverbal.  Cleaver, 203 S.W.3d at
375.  

However,
use alone does not create an easement by estoppel.  Id. at 377. 
The doctrine is grounded in the principle that “justice forbids one to gainsay
his own acts or assertions.”  Wallace v. McKinzie, 869 S.W.2d
592, 595 (Tex. App.–Amarillo 1993, writ denied).  The doctrine prohibits one,
who by his speech or conduct has induced another to act in a particular manner,
from changing positions to the detriment of the other who acted in reliance on
his speech or conduct.  See id. at 595–96.  “In order to create
an easement by estoppel, something must be said or done by the owner of the
servient estate at the time of the grant of the dominant estate that induces
the acceptance of the grant.”  Allen v. Allen, 280 S.W.3d 366,
381 (Tex. App.–Amarillo 2008, pet. denied) (quoting Lakeside Launches,
Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 872 (Tex. App.–Austin
1988, writ denied)).

            Because
the doctrine of easement by estoppel is a judicial means of acquiring an
interest in property based solely on communication or conduct, it must be
strictly applied.  See Allen, 280 S.W.3d at 381. 
Thus, the communication or conduct should be certain, precise, and clear.  Id. 
Application of the doctrine is “rare and nebulous” outside cases involving a
property owner’s (1) dedication of a street, alley, or square, (2) selling land
with reference to a map, and (3) allowing a purchaser to expend money on an
alleged servient estate.  Id. (quoting Drye v. Eagle Rock
Ranch, Inc., 364 S.W.2d 196, 209 (Tex. 1962)).

            Prescriptive
Easement

A
prescriptive easement is created by a “claimant’s adverse actions under color
of right.”  Allen, 280 S.W.3d at 377.  To establish a
prescriptive easement, Erwin was required to prove that he used Ferris’s land
in a manner that was open, notorious, continuous, exclusive, and adverse for
the requisite time.  Brooks v. Jones, 578 S.W.2d 669, 679 (Tex.
1979).  The absence of any of these elements is fatal to the claim of a
prescriptive easement.  Allen, 280 S.W.3d at 377.  When the
property owner and the claimant of the easement both use the property, the
claimant’s use is not exclusive of the owner’s use, and thus, not considered
adverse.  Id.  A prescriptive easement requires adverse
possession for a period of ten years.  Mack v. Landry, 22 S.W.3d
524, 531 (Tex. App.–Houston [14th Dist.] 2000, no pet.).  Also, a claimant
fails to create a prescriptive easement by his use of property with the
permission of the owner no matter how long the use continues.  Allen,
280 S.W.3d at 377.

            Analysis

            Leonard
Foster told Erwin that he could use the driveway on Ferris’s property to gain
access to the property Erwin was purchasing from the Fosters.  Erwin relies on
this representation to create a fact issue regarding his claim of easement by
estoppel.  Erwin never alleges that Ferris told Erwin he could use the driveway.

            However,
as part of his summary judgment evidence, Ferris attached the deed from the
Fosters to Ferris and the deed from the Fosters to the Erwins.  These deeds
demonstrate that Ferris purchased his property from the Fosters on March 27,
1997, but that the Erwins did not purchase their property from the Fosters
until April 6, 1998.  Thus, the Fosters no longer owned the driveway when Mr.
Foster made his representation to Erwin.  Because an easement by estoppel
requires a representation from the then-landowner, and because Erwin presented
no evidence that Ferris communicated to Erwin a willingness to allow Erwin to
use the driveway, Ferris was entitled to summary judgment regarding Erwin’s
claim of easement by estoppel.  See Allen, 280 S.W.3d at
381.[6]

            Erwin’s
claim of prescriptive easement also fails as a matter of law.  First, Ferris
filed suit in 2006.  Thus, Ferris had not owned the driveway for ten years at
the time he filed suit.  See Mack, 22 S.W.3d at 531
(prescriptive easement requires adverse possession for ten years).  Second,
Erwin and Ferris each had access to and used the driveway during that time. 
Because Erwin’s use of the driveway was never exclusive of Ferris’s use, his
use could not be considered adverse.  See Brooks, 578
S.W.2d at 679.  Therefore, we hold that no prescriptive easement existed.  

Erwin’s
second issue is overruled.

 

Disposition

Having
overruled Erwin’s first, second, and third issues, we affirm the
trial court’s judgment.

 

                                                                                                Brian Hoyle

                                                                                                  
   Justice

 

 

                                                                   

Opinion delivered June 30, 2011.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)








 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

APPENDIX 1




 






 




















                [1]
A “Memorandum of Settlement” was signed by both parties and their attorneys at
the mediation.  A copy of the “Memorandum of Settlement” is attached as
Appendix 1.

 





                [2]
Although the judgment does not specifically address Ferris’s request for
damages, it includes unequivocal language that indicates finality by stating,
“By signing this [order], it is the intent of the [trial court] to dispose of
all pending claims asserted in this cause by [Ferris] against [Erwin] and
[Erwin’s] counterclaims against [Ferris] and that the judgment is final for
purposes of appeal.”  Thus, the judgment is final, and we have jurisdiction
over this appeal.  See In re Burlington Coat Factory Warehouse of
McAllen, Inc., 167 S.W.3d 827, 830 (Tex. 2005).

 





[3] We have addressed Ferris’s
arguments in the order in which they were presented.  Even had we considered
the waiver issue first and determined that Erwin did not waive his third issue,
the outcome would not differ.  In the interest of brevity, we have limited our
analysis to only the issue of the existence of a valid and enforceable
arbitration agreement.





                [4]
Erwin attached an unsigned copy of a proposed real estate contract to his first
amended counterclaim.  However, he did not attach the proposed real estate
contract, signed or unsigned, to his motion to compel arbitration.

 





[5] Because the trial court properly
granted Ferris’s no evidence motion for summary judgment as to Erwin’s breach
of settlement agreement cause of action, we need not consider Ferris’s
traditional motion for summary judgment on this ground.  Tex. R. App. P. 47.1; Ridgway,
135 S.W.3d at 602. 





[6] Although Erwin has not made this
argument, we note that the record indicates that, within days after Erwin
purchased the property, Ferris allowed Erwin to use the driveway and continued
to do so for several years.  However, there is no evidence that Erwin relied on
these actions by Ferris in making changes to the property.  Erwin’s only claim
of change in position to his detriment was in the initial purchase of the
property, a decision that was based on his reliance on the statement by Leonard
Foster.  Thus, Ferris’s subsequently allowing Erwin to use the driveway also
fails, as a matter of law, to establish an easement by estoppel.  See Allen,
280 S.W.3d at 383 (property owner’s silent acquiescence to others use of road
insufficient to create easement by estoppel).