# NO. 12-10-00273-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TIMOTHY ERWIN,* *APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *SCOTT FERRIS,* *APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Timothy Erwin appeals the trial court's summary judgment entered in favor of Scott Ferris. In three issues, Erwin argues that the trial court erred in denying his motion to compel arbitration and in granting Ferris's motion for summary judgment. We affirm.

## BACKGROUND

Scott Ferris and Timothy Erwin are neighbors. In the late 1990s, through separate transactions, Ferris bought a house and Erwin bought the adjoining property and barn from Leonard and Ann Foster. Erwin believed that the land he purchased granted him an easement in Ferris's driveway by which he could access his barn. For several years, Erwin used Ferris's driveway consistent with this belief.

By June 2006, Ferris no longer wanted Erwin to use his driveway. Believing that no easement existed, Ferris sued Erwin for monetary damages and injunctive relief. Erwin countersued.

The trial court ordered that the case be mediated. At the mediation, the parties reached a compromise, and both Ferris and Erwin signed a settlement agreement wherein Ferris agreed to

sell his house "as is" to Erwin for $127,500.[1]   Among other provisions of the settlement agreement, Erwin could, at his election, have the house inspected.  Further, the real estate contract was required to include reasonable and customary terms regarding the parties' ability to terminate the contract or submit to arbitration if the house was determined not to be in substantially good condition.  Erwin's counsel agreed to draft a real estate contract pertaining to the sale.

The parties sought to complete the transaction by May 30, 2007.  However, Erwin did not send Ferris a proposed real estate contract until July 11, 2007.  The proposed contract included an arbitration clause, but neither party signed the proposed contract.

Thereafter, Erwin had the house inspected.  The inspector noted that the house needed significant repairs.  Erwin argued that the settlement agreement required Ferris to pay for the repairs because the property was not in "substantially good condition" without the repairs being made.  Ferris responded that Erwin agreed to purchase the property "as is," and, as a result, could either purchase the property without the repairs being made or terminate the settlement agreement.

After it became apparent that the parties were at an impasse, Erwin amended his counterclaim and alleged that Ferris breached the settlement agreement.  Ferris responded by amending his petition and including an alternative allegation that Erwin breached the settlement agreement.  Ferris also filed an amended answer to Erwin's counterclaim in which he alleged that there was no valid contract between the parties and that his performance under the alleged contract was excused because of a prior material breach by Erwin.

Subsequently, Erwin filed a motion to compel arbitration.  The trial court denied Erwin's motion to compel arbitration because Erwin failed to establish the existence of an arbitration agreement that governed the dispute.  Erwin continued to pursue the matter before the trial court.  Erwin again amended his petition to include only a claim that Ferris breached the settlement agreement.

In June 2009, Ferris filed a combined no evidence and traditional motion for summary judgment concerning both his claims for affirmative relief and Erwin's claims against him.  Erwin responded.  On May 28, 2010, the trial court granted Ferris's motion for summary judgment, but

---

[1] A "Memorandum of Settlement" was signed by both parties and their attorneys at the mediation.  A copy of the "Memorandum of Settlement" is attached as Appendix 1.

declined to award Ferris damages or attorney's fees.[2]  Erwin filed a motion for new trial, which was denied.  This appeal followed.

## ARBITRATION

In his third issue, Erwin argues that the trial court erred by denying his motion to compel arbitration.  Ferris responds that (1) there is not a valid and enforceable arbitration agreement, (2) alternatively, the arbitration agreement does not encompass Ferris's claims against Erwin, and (3) Erwin waived the issue by failing to pursue an interlocutory appeal.[3]

**Standard of Review and Governing Law**

The standard of review for determining a trial court's ruling on a motion to compel arbitration is abuse of discretion.  *See* ***Perry Homes v. Cull***, 258 S.W.3d 580, 598 (Tex. 2008).  We defer to a trial court's factual findings if they are supported by the evidence.  *See **id.***  Because a trial court has no discretion to apply the law incorrectly, we do not defer to the trial court on questions of law.  ***Id.***

Arbitration agreements are valid, irrevocable, and enforceable to the same extent as any other contract.  *See* 9 U.S.C.A. § 2 (2011).  We first determine whether the arbitration agreement satisfies Texas law governing contract formation.  *See **In re Poly-America, L.P.***, 262 S.W.3d 337, 347 (Tex. 2008); *see also **In re Morgan Stanley & Co.***, 293 S.W.3d 182, 187 (Tex. 2009) (courts have authority and responsibility to determine existence of a contract containing relevant arbitration agreement).  Once we determine the existence of an enforceable arbitration agreement, the strong presumption from federal law in favor of arbitration requires that doubts be resolved in favor of arbitration.  *See **Poly-America, L.P.***, 262 S.W.3d at 348.

Unless disputed issues of fact require a full evidentiary hearing, a trial court should decide a motion to compel arbitration summarily.  ***Id.*** at 355.  Ordinarily, the hearing at which a motion to compel arbitration is decided involves application of the arbitration agreement terms to

---

[2] Although the judgment does not specifically address Ferris's request for damages, it includes unequivocal language that indicates finality by stating, "By signing this [order], it is the intent of the [trial court] to dispose of all pending claims asserted in this cause by [Ferris] against [Erwin] and [Erwin's] counterclaims against [Ferris] and that the judgment is final for purposes of appeal."  Thus, the judgment is final, and we have jurisdiction over this appeal. *See **In re Burlington Coat Factory Warehouse of McAllen, Inc.***, 167 S.W.3d 827, 830 (Tex. 2005).

[3] We have addressed Ferris's arguments in the order in which they were presented.  Even had we considered the waiver issue first and determined that Erwin did not waive his third issue, the outcome would not differ.  In the interest of brevity, we have limited our analysis to only the issue of the existence of a valid and enforceable arbitration agreement.

undisputed facts amenable to proof by affidavit.  ***Jack B. Anglin Co., Inc. v. Tipps***, 842 S.W.2d 266, 269 (Tex. 1992).  Thus, the trial court generally decides whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations.  ***Id.***  However, if the facts are disputed, the trial court must conduct an evidentiary hearing to determine the disputed facts.  ***Id.***

The elements necessary to form a binding contract are (1) an offer, (2) acceptance of the offer, (3) a meeting of the minds, (4) the parties' consent to the terms, (5) execution and delivery with the intent that it be mutual and binding, and (6) consideration.  ***Advantage Physical Therapy, Inc. v. Cruse***, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.).  Whether an agreement was reached is a question of fact.  ***Id.***

## Existence of a Valid Arbitration Agreement

In the instant case, the Memorandum of Settlement between the parties stated, in pertinent part as follows:  "[real estate contract] to [include reasonable and] customary terms to terminate or submit to arbitration to resolve such issue, if any if not substantial[ly] in good condition."  Moreover, the proposed real estate contract contained an arbitration clause that stated as follows:

> It is specifically agreed by the parties that the Buyer is purchasing the property "As Is" subject to the terms described herein should the property not be in substantially good condition, the Buyer may elect to terminate this agreement, or, in the alternative to submit to arbitration to resolve any issue contained herein to include purchase price.  The arbitrator shall be Tom J. Brown of the firm, Brown, Bowman[,] and Smith.

In his motion to compel arbitration, Erwin asserted that he was "ready and willing" to arbitrate whether the property is in substantially good condition, but that Ferris had refused to participate in the arbitration.  Erwin further requested that the trial court appoint Tom Brown as arbitrator.  In his motion to compel arbitration, Erwin conceded that, pursuant to the settlement agreement of the parties, his counsel agreed to prepare a real estate contract that included a "reasonable and customary" arbitration clause.  However, while Erwin included the settlement agreement as an exhibit to his motion, he did not attach a real estate contract to his motion.  In fact, in our review of the record, we have found no evidence that a real estate contract was ever signed by the parties.[4]  Thus, there is no evidence of record supporting either the wording of a "reasonable and customary" arbitration clause or the claims that this clause would cover.

---

[4] Erwin attached an unsigned copy of a proposed real estate contract to his first amended counterclaim. However, he did not attach the proposed real estate contract, signed or unsigned, to his motion to compel arbitration.

4

Ferris responded to Erwin's motion by arguing that there was no valid arbitration agreement. Ferris further contended that the only potential arbitration agreement was located in the settlement agreement and that the language of this agreement is too ambiguous to be enforceable. Finally, Ferris argued that an arbitration could only result in an "as is" sale for the original agreed price of $127,500 or the termination of the contract. But the arbitration could not, according to Ferris, result in the agreed price being reduced because of needed repairs. Ferris attached to his response a letter from Erwin's counsel in which Erwin's counsel stated, "[I]t is my position that the arbitrator determines not only whether the house is in good condition…, but [also] … the amount to be deducted from the sales amount for purposes of repair." Ferris also raised two alternative arguments to the trial court. First, Ferris disagreed with Erwin's position and asserted that even if arbitration were ordered, the only issue should be whether the property is in substantially good condition. Second, Ferris argued that the arbitrator should be appointed by the trial court because the only potential arbitration agreement did not identify the arbitrator.

Based on our review of the record, Erwin failed to present any evidence that the arbitration clause contained in the proposed real estate contract was agreed upon by the parties. *See Advantage Physical Therapy, Inc.*, 165 S.W.3d at 24. Without a signed real estate contract, the only reference to arbitration is in the settlement agreement. That reference to arbitration is an agreement to include an arbitration clause in a subsequent agreement. But it is not an agreement to arbitrate. *See id*. Because the trial court properly found that there was no valid arbitration agreement between the parties, we hold that it correctly denied Erwin's motion to compel arbitration.

Moreover, to the extent that Erwin's third issue can be interpreted to be an argument that the trial court failed to hold an evidentiary hearing on his motion to compel, that claim fails. Erwin's brief does not contain appropriate citations to the record indicating that a request for hearing ever occurred. *See* TEX. R. APP. P. 38.1(i). Furthermore, as a prerequisite to presenting a complaint for appellate review, Erwin was required to present the complaint to the trial court by timely request, objection, or motion that stated the grounds for the ruling that Erwin requested from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* TEX. R. APP. P. 33.1. From our review of the record and of Erwin's brief, there is no indication that Erwin requested a hearing on

5

his motion to compel arbitration. Thus, any error by the trial court in failing to conduct a hearing was waived. *See **id.***

Erwin's third issue is overruled.

## MOTION FOR SUMMARY JUDGMENT

In his first issue, Erwin complains that the trial court erred in granting summary judgment in Ferris's favor because Erwin presented a genuine issue of material fact regarding whether Ferris breached the settlement agreement. In his second issue, Erwin complains that the summary judgment was improper because he presented a genuine issue of material fact concerning whether he obtained an easement by estoppel or a prescriptive easement.

### Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); ***Nixon v. Mr. Prop. Mgmt. Co.***, 690 S.W.2d 546, 548 (Tex. 1985). When the movant seeks summary judgment on a claim in which the nonmovant bears the burden of proof, the movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See **Randall's Food Markets, Inc. v. Johnson***, 891 S.W.2d 640, 644 (Tex. 1995). When the movant seeks summary judgment on a claim in which the movant bears the burden of proof, the movant must prove all essential elements of the claim. ***Winchek v. Am. Express Travel Related Servs. Co.***, 232 S.W.3d 197, 201 (Tex. App.–Houston [1st Dist.] 2007, no pet.). Once the movant has established a right to summary judgment, the burden of proof shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See **City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 678-79 (Tex. 1979).

Additionally, after an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See **Ford Motor Co. v. Ridgway***, 135 S.W.3d 598, 600 (Tex. 2004). We review a no evidence motion for summary judgment under the same legal sufficiency standards as a directed verdict. ***King***

6

***Ranch, Inc. v. Chapman***, 118 S.W.3d 742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. ***Id.*** at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. ***Id.*** Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. ***Id.***

In both traditional and no evidence summary judgment motions, we review the entire record de novo and in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See **Sudan v. Sudan***, 199 S.W.3d 291, 292 (Tex. 2006); ***KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.***, 988 S.W.2d 746, 748 (Tex. 1999). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the motion is meritorious. ***State Farm Fire & Cas. Co. v. S.S.***, 858 S.W.2d 374, 380 (Tex. 1993). When a party moves for both a traditional and a no evidence summary judgment, generally we first review the trial court's summary judgment under the no evidence standards of Rule 166a(i). ***Ridgway***, 135 S.W.3d at 600. If the no evidence summary judgment was properly granted, we do not reach arguments made under the traditional motion for summary judgment. *See **id.*** at 602.

**Breach of Settlement Agreement**

We first address whether the trial court properly granted Ferris's summary judgment as to Erwin's claim that Ferris breached the settlement agreement.

A settlement agreement is simply a contract between the parties; a breach of settlement agreement cause of action is identical to a breach of contract cause of action. *See **Padilla v. LaFrance***, 907 S.W.2d 454, 461 (Tex. 1995). To establish a breach of contract, Erwin was required to prove the existence of a valid contract, his performance or tendered performance under the contract, breach of the contract by Ferris, and damages sustained as a result of the breach. ***Winchek***, 232 S.W.3d at 202. As set forth previously, the elements necessary to form a binding contract are (1) an offer, (2) acceptance of the offer, (3) a meeting of the minds, (4) the parties'

7

consent to the terms, (5) execution and delivery with the intent that it be mutual and binding, and (6) consideration. *See Advantage Physical Therapy, Inc.*, 165 S.W.3d at 24.

An appellate court reviews a trial court's construction of an unambiguous contract de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). When construing a written contract, courts ascertain the intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Courts examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If there is no ambiguity in the instrument, its construction is a question of law for the court. *See id*. Interpretation of a contract becomes a fact issue, to be resolved by extrinsic evidence, only when application of pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper. *Id*. at 393–94.

When a buyer purchases something "as is," the buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. *Prudential Ins. v. Jefferson Assoc.*, 896 S.W.2d 156, 161 (Tex. 1995). Thus, subject to exceptions not applicable in this case, a valid "as is" agreement prevents a buyer from holding a seller liable if the item purchased turns out to be worth less than the price paid. *Id*. In *Prudential*, the supreme court considered this issue in light of similar factual circumstances, and in so doing, stated as follows:

> [The buyer] has agreed to take the full risk of determining the value of the purchase. He is not obliged to do so; he could insist instead that the seller assume part or all of that risk by obtaining warranties to the desired effect. If the seller is willing to give such assurances, however, he will ordinarily insist upon additional compensation. Rather than pay more, a buyer may choose to rely entirely upon his own determination of the condition and value of his purchase.

*Id.*

Here, in his no evidence motion for summary judgment, Ferris claimed that Erwin had no evidence to support any element of his breach of settlement agreement cause of action. Thus, Erwin had the burden to bring forth more than a scintilla of evidence underlying each challenged element.

Despite his burden to do so, Erwin failed to bring forth evidence that Ferris breached the contract. Erwin contends that Ferris breached the contract because Ferris was unwilling to accept

8

less than the agreed "as is" price even though Erwin's inspection of the house uncovered the need for significant repairs. We construe Erwin's argument as an allegation that the contract can be read to require Ferris to take less than the "as is" price for the house if the house is not in substantially good condition. Yet, Erwin's argument is foreclosed by the plain language of the contract. Simply put, Ferris had no contractual obligation to accept less than the agreed "as is" price.

Erwin agreed to purchase Ferris's house "as is." He also negotiated the ability to inspect the house first to ensure that the house was in substantially good condition. If he decided the house was not in substantially good condition, Erwin had the contractual right to terminate the contract. He did not, however, have the contractual right to seek a reduction in the price. Only by Ferris's agreeing to sell Erwin the house at a lesser price, and subsequently entering into another contract with Erwin, could Ferris be required to sell Erwin the house for less than the agreed upon "as is" price. There is no evidence that Ferris agreed to take less than the initially bargained-for price. There is further no evidence that Erwin agreed to pay the initially agreed upon price. Rather, the evidence reflects that Erwin determined that the repairs made the bargain less desirable for him.

The trial court correctly construed the contract as giving Erwin flexibility to terminate the contract after his inspection and, further, that this right to terminate did not affect Ferris's ability to require the full "as is" price to consummate the sale of the house. Because Erwin presented no evidence that Ferris was under an obligation to accept less money to account for repairs Erwin deemed necessary, Erwin presented no evidence that Ferris breached the settlement agreement. Thus, the trial court properly granted Ferris's no evidence motion for summary judgment on Erwin's breach of settlement agreement cause of action. Erwin's first issue is overruled.[5]

**Easement by Estoppel and Prescriptive Easement**

With regard to Ferris's claims for affirmative relief, Erwin argues that Ferris was not entitled to summary judgment because Erwin raised a genuine issue of material fact concerning whether Erwin obtained an easement by estoppel or a prescriptive easement.

---

[5] Because the trial court properly granted Ferris's no evidence motion for summary judgment as to Erwin's breach of settlement agreement cause of action, we need not consider Ferris's traditional motion for summary judgment on this ground. TEX. R. APP. P. 47.1; *Ridgway*, 135 S.W.3d at 602.

9

*Easement by Estoppel*

Generally, easements must be in writing. ***Machala v. Weems***, 56 S.W.3d 748, 757 (Tex. App.–Texarkana 2001, no pet.). An easement by estoppel is an exception to this general rule. *See* ***Cleaver v. Cundiff***, 203 S.W.3d 373, 375 (Tex. App.–Eastland 2006, no pet.). To prove an easement by estoppel, the proponent is required to demonstrate that (1) there was a representation communicated, either by word or action, to him, (2) he believed the communication, and (3) he relied on the communication to his detriment. *See* ***Holden v. Weidenfeller***, 929 S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ denied). Once created, an easement by estoppel is binding upon successors in title if reliance upon the existence of the easement continues. ***Id.*** The representations creating an easement by estoppel may be verbal or nonverbal. ***Cleaver***, 203 S.W.3d at 375.

However, use alone does not create an easement by estoppel. ***Id.*** at 377. The doctrine is grounded in the principle that "justice forbids one to gainsay his own acts or assertions." ***Wallace v. McKinzie***, 869 S.W.2d 592, 595 (Tex. App.–Amarillo 1993, writ denied). The doctrine prohibits one, who by his speech or conduct has induced another to act in a particular manner, from changing positions to the detriment of the other who acted in reliance on his speech or conduct. *See* ***id.*** at 595–96. "In order to create an easement by estoppel, something must be said or done by the owner of the servient estate at the time of the grant of the dominant estate that induces the acceptance of the grant." ***Allen v. Allen***, 280 S.W.3d 366, 381 (Tex. App.–Amarillo 2008, pet. denied) (quoting ***Lakeside Launches, Inc. v. Austin Yacht Club, Inc.***, 750 S.W.2d 868, 872 (Tex. App.–Austin 1988, writ denied)).

Because the doctrine of easement by estoppel is a judicial means of acquiring an interest in property based solely on communication or conduct, it must be strictly applied. *See* ***Allen***, 280 S.W.3d at 381. Thus, the communication or conduct should be certain, precise, and clear. ***Id.*** Application of the doctrine is "rare and nebulous" outside cases involving a property owner's (1) dedication of a street, alley, or square, (2) selling land with reference to a map, and (3) allowing a purchaser to expend money on an alleged servient estate. ***Id.*** (quoting ***Drye v. Eagle Rock Ranch, Inc.***, 364 S.W.2d 196, 209 (Tex. 1962)).

*Prescriptive Easement*

A prescriptive easement is created by a "claimant's adverse actions under color of right." ***Allen***, 280 S.W.3d at 377. To establish a prescriptive easement, Erwin was required to prove that

he used Ferris's land in a manner that was open, notorious, continuous, exclusive, and adverse for the requisite time. **Brooks v. Jones**, 578 S.W.2d 669, 679 (Tex. 1979). The absence of any of these elements is fatal to the claim of a prescriptive easement. **Allen**, 280 S.W.3d at 377. When the property owner and the claimant of the easement both use the property, the claimant's use is not exclusive of the owner's use, and thus, not considered adverse. **Id.** A prescriptive easement requires adverse possession for a period of ten years. **Mack v. Landry**, 22 S.W.3d 524, 531 (Tex. App.–Houston [14th Dist.] 2000, no pet.). Also, a claimant fails to create a prescriptive easement by his use of property with the permission of the owner no matter how long the use continues. **Allen**, 280 S.W.3d at 377.

*Analysis*

Leonard Foster told Erwin that he could use the driveway on Ferris's property to gain access to the property Erwin was purchasing from the Fosters. Erwin relies on this representation to create a fact issue regarding his claim of easement by estoppel. Erwin never alleges that Ferris told Erwin he could use the driveway.

However, as part of his summary judgment evidence, Ferris attached the deed from the Fosters to Ferris and the deed from the Fosters to the Erwins. These deeds demonstrate that Ferris purchased his property from the Fosters on March 27, 1997, but that the Erwins did not purchase their property from the Fosters until April 6, 1998. Thus, the Fosters no longer owned the driveway when Mr. Foster made his representation to Erwin. Because an easement by estoppel requires a representation from the then-landowner, and because Erwin presented no evidence that Ferris communicated to Erwin a willingness to allow Erwin to use the driveway, Ferris was entitled to summary judgment regarding Erwin's claim of easement by estoppel. *See* **Allen**, 280 S.W.3d at 381.[6]

Erwin's claim of prescriptive easement also fails as a matter of law. First, Ferris filed suit in 2006. Thus, Ferris had not owned the driveway for ten years at the time he filed suit. *See* **Mack**, 22 S.W.3d at 531 (prescriptive easement requires adverse possession for ten years). Second, Erwin and Ferris each had access to and used the driveway during that time. Because

---

[6] Although Erwin has not made this argument, we note that the record indicates that, within days after Erwin purchased the property, Ferris allowed Erwin to use the driveway and continued to do so for several years. However, there is no evidence that Erwin relied on these actions by Ferris in making changes to the property. Erwin's only claim of change in position to his detriment was in the initial purchase of the property, a decision that was based on his reliance on the statement by Leonard Foster. Thus, Ferris's subsequently allowing Erwin to use the driveway also fails, as a matter of law, to establish an easement by estoppel. *See* **Allen**, 280 S.W.3d at 383 (property owner's silent acquiescence to others use of road insufficient to create easement by estoppel).

11

Erwin's use of the driveway was never exclusive of Ferris's use, his use could not be considered adverse. *See **Brooks***, 578 S.W.2d at 679. Therefore, we hold that no prescriptive easement existed.

Erwin's second issue is overruled.

## DISPOSITION

Having overruled Erwin's first, second, and third issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 30, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

**APPENDIX 1**



NO. 06-00491

| SCOTT FERRIS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | OF VAN ZANDT COUNTY, TEXAS |
| | § | |
| TIMOTHY ERWIN | § | 294TH JUDICIAL DISTRICT |

## MEMORANDUM OF SETTLEMENT

The parties to this Memorandum of Settlement: (strike inapplicable preamble and underline each party initial in the brackets [ ] the preamble agreed upon)

[ X ] A. Agree to settle all claims asserted or which could have been asserted in the referenced lawsuit based upon the terms as set forth herein; or

[ X ] B. Agree to enter into a subsequent settlement agreement, on or before _June 15, 2007_ , 2007, incorporating the terms as set forth herein:

## TERMS OF SETTLEMENT

[ X ] Payment and settlement on or before __$127,500.00__ (S.F.) (TE)

[ ] Defendant to pay to Plaintiff ~~$126,500~~ For purchase of TT's Home / Property. Δ's counsel to draw R/E K, Seller to sell as is. Defendant to purch Pl. Home. Δ oppty. to have home inspected. R/E K to incl. rsble + customary terms to terminate if not substantive in good cond. Seller to pay for Title Pol. Buyer other R/E costs.

[ X ] Defendant's counsel to draw all documents with usual and customary hold-harmless and indemnities such that all matters are forever settled as between the parties. R/E K executed by 5 # on or before noon Wed. 5/30/07 8/3. Closing or or before ~~6/30/07~~ 7/15/07 8/30/07

[ X ] Compromise Settlement Agreement, Motion and Order of Dismissal With Prejudice to be drawn by Defendant's counsel with costs borne by party which incurred. Exceptions, if any, _____ or submit to arbitrator to resolve such issues, if any. (S.F.) (TE)

Parties to remain at peace and share driveway pending closing, Settlement Conf. dates

Agreed to on __5/22__, 2007

Signatures of parties and attorneys:

Respectfully submitted,

BROWN, BAUMAN & SMITH
A Professional Corporation
400 E. Fifth Street
Tyler, Texas 75701 .
(903) 597-6333
(903) 597-6335   FAX

By:_____
    TOM J. BROWN, Mediator
    State Bar No. 03175900

         – 2 –                    *F:\Tom\Mediations\Memorandum of Settlement*

15